AB INTESTATO DE VÍCTOR MANUEL SALDAÑA CANDELARIO, también conocido como VÍCTOR SALDAÑA CANDELARIO; BASILISA MORALES BONILLA, Ex parte, peticionaria.

*Número:* CE-89-719         *Resuelto:* 29 de junio de 1990

*Santiago Mari Roca*, de *Biaggi Busquets & Mari Roca*, abogado de la
peticionaria.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del
Tribunal.

I

Basilisa Morales Bonilla contrajo matrimonio con Víctor M.
Saldaña Candelario el 14 de mayo de 1988. Antes de formalizarlo,
comparecieron ante el notario Santiago Mari Roca y otorgaron
una escritura de *Capitulaciones Matrimoniales* para regir sus
relaciones económicas durante la vigencia del matrimonio. Esti-
pularon que no estaría sujeto al régimen de la sociedad legal de
gananciales y que interesaban mantener por separado la propie-
dad y administración de todos sus respectivos bienes presentes y
futuros. *Nada se pactó en cuanto al derecho viudal a la cuota
usufructuaria.*

El 19 de mayo de 1989 falleció Saldaña Candelario. Su viuda,
Basilisa Morales, presentó una petición de declaratoria de here-
deros en el Tribunal Superior, Sala de Mayagüez. Alegó que ella y

cuatro (4) hijas procreadas por el causante eran las únicas herederas. El 21 de septiembre de 1989 dicho foro (Hon. Manuel A. Acevedo Hernández, Juez) dictaminó motu propio que "[p]or estar casada bajo el régimen de capitulaciones matrimoniales, la viuda no tiene derecho a la cuota viudal". *Exhibit* II, pág. 3. Le concedió diez (10) días a la peticionaria Morales Bonilla para enmendar sus alegaciones. A solicitud de ella, acordamos revisar.

## II

Como hace más de cuatro (4) décadas expresó el fenecido jurista Félix Ochoteco, Jr., la solución de esta controversia novel nos obliga "a penetrar en un campo jurídico que permanece inexplorado por nuestro Tribunal Supremo y aún por nuestros propios civilistas, razón por la cual el problema que vamos a considerar invita a mayores especulaciones e inquietudes". F. Ochoteco, *La viudez ante la herencia y la herencia ante las capitulaciones matrimoniales*, 12 Rev. Der. Leg. Jur. C. Abo. de P.R. 77, 82 (1949). Acometamos la tarea.

█ La fuente del derecho a la cuota viudal usufructuaria es el Art. 761 del Código Civil, 31 L.P.R.A. sec. 2411, expositivo de que "[e]l viudo o viuda que al morir su consorte no se hallare divorciado, o lo estuviere por culpa del cónyuge difunto, *tendrá derecho a una cuota, en usufructo*, igual a la que por *legítima* corresponda a cada uno de sus hijos o descendientes legítimos no mejorados". (Énfasis suplido.) El Código Civil no distingue a aquellos cónyuges supérstites cuyo régimen económico matrimonial estuvo regido por capitulaciones de aquellos cónyuges supérstites sujetos a las disposiciones de la sociedad legal de gananciales. Ante ese silencio legislativo, resolvemos que debe aplicarse el principio de que "cuando la ley no distingue, tampoco nos incumbe distinguir". Ochoteco, *supra*, págs. 84–85.

Sobre este particular, Manresa sostiene que "[e]l régimen de la sociedad conyugal, aceptado por los contrayentes respecto a los bienes, aun cuando sea el de la *separación*, tampoco influye en la

concesión del derecho al viudo". J.M. Manresa, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1973, T. VI, Vol. 1, pág. 895. Por otro lado, Puig Brutau, al glosar el tema de la legítima del cónyuge supérstite con lógica nos dice que "[u]n derecho propiamente sucesorio a favor del cónyuge supérstite, *será tanto más necesario* cuando, por haber vivido el matrimonio bajo un régimen matrimonial de *absoluta separación de bienes*, no exista un derecho de participar en las ganancias obtenidas en vida por el pre-muerto". (Énfasis suplido.) J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1977, T. V, Vol. III, pág. 107.

██ Aun cuando las capitulaciones matrimoniales constituyen un contrato sujeto al régimen de libertad que impera en nuestro sistema de contratación, la autonomía de la voluntad de las partes no es absoluta. *Umpierre v. Torres Díaz*, 114 D.P.R. 449, 459 (1983). Los otorgantes de capitulaciones matrimoniales no podrán estipular nada que sea contrario a las leyes o a las buenas costumbres ni depresivo de la autoridad que respectivamente corresponda en la familia a los futuros cónyuges. Art. 1268 del Código Civil, 31 L.P.R.A. sec. 3552; Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372.([1]) Esa restricción contractual, en armonía con el Art. 1223 del Código Civil, 31 L.P.R.A. sec. 3421,([2]) prohíbe generalmente la contratación sobre la herencia futura. Es razonable concluir, pues, que los cónyuges que optan por regular su relación patrimonial mediante un régimen de separación no pueden renunciar en forma expresa o tácita al derecho de

---

([1]) Dispone que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral ni al orden público.

([2]) El Art. 1223 del Código Civil, 31 L.P.R.A. sec. 3421, dispone:

"Pueden ser objeto de contrato todas las cosas que no están fuera del comercio de los hombres, aun las futuras.

"Sobre la herencia futura no se podrá, sin embargo, celebrar otros contratos que aquellos cuyo objeto sea practicar entre vivos la división de un caudal conforme a la sec. 2875 de este título.

"Pueden ser igualmente objeto de contrato todos los servicios que no sean contrarios a las leyes o a las buenas costumbres."

usufructo viudal. Ochoteco, *supra*, pág. 86. Al respecto, Manresa indica que "la renuncia o transacción sobre la legítima que debe corresponder a alguno de los desposados, la condición de haber de aportarse al matrimonio . . . constituyen otra serie de actos prohibidos en general por la ley, y no admisibles, por tanto, en las capitulaciones matrimoniales". Manresa, *op. cit.*, 1969, T. IX, pág. 144. Esta conclusión está en armonía y encuentra apoyo en nuestra jurisprudencia, la cual ha reconocido que el cónyuge viudo es un *heredero forzoso. Colón Gutiérrez v. Registrador*, 114 D.P.R. 850, 858 (1983); Art. 736 del Código Civil, 31 L.P.R.A. sec. 2362.

Cabe nuevamente reproducir el análisis de Ochoteco:

> Al determinar dicho Código quiénes pueden suceder con testamento y quiénes son incapaces para ello (artículos 675 y 676), no incluye entre los últimos al viudo o viuda de los que fallezcan bajo capitulaciones matrimoniales, como tampoco excluye a aqu[é]llos en su artículo 642 entre las personas que deben ser citadas en los procedimientos de protocolización de los testamentos ológrafos.

> Y es lógico que así sea, ya que las capitulaciones matrimoniales sólo dan vida a un régimen económico que no tiene, ni puede tener pacto alguno con la muerte y en cuanto a los derechos sucesorios se refiere, con las solas excepciones dispuestas por la ley.

> Por disposición terminante del artículo 603 de dicho cuerpo legal, la muerte y sólo la muerte engendra la trasmisión de los derechos de sucesión de un finado, que por ficción de ley, continúa viviendo en la persona de sus herederos; *Porto Rico R. L. & P. Co. vs. Corte de Distrito, 38 D.P.R. 340*. No alcanzamos a comprender, cómo el óbito de un cónyuge puede arrastrar hasta la tumba la personalidad que como tal cónyuge ha conservado el supérstite durante la convivencia matrimonial, y no obstante la existencia y sus efectos únicamente económicos, reiteramos, de las capitulaciones matrimoniales, al igual que sucede con la propia sociedad de gananciales. (Cita omitida.) Ochoteco, *supra*, pág. 85.

■ Al arribar a esta decisión, no pasamos por alto que el usufructo viudal —a diferencia del derecho de otros herederos forzosos— tiene un fin esencialmente económico, sujeto a la

imposición de gravámenes(3) y susceptible de transformación mediante equivalencia compensatoria. Art. 765 del Código Civil, 31 L.P.R.A. sec. 2415; *Ripoll Alzuru v. Rosa Pagán*, 121 D.P.R. 1 (1988); E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. I, pág. 94. Por ende, se argumenta que no está impedida su renuncia en capitulaciones matrimoniales. Véase Alfonso de Cossio, *Los derechos sucesorios del cónyuge sobreviviente*, XLI Rev. Der. Priv. 129, 138 (1957). Sin embargo, rechazamos esa postura que desnaturaliza el carácter permanente y la función social de la cuota usufructuaria. Repetimos, "[e]xisten razones en favor y en contra de tipo socio-económico que deben ser conciliados estatutariamente". *Ripoll Alzuru v. Rosa Pagán*, supra.

Por los fundamentos expuestos, *se dictará sentencia revocatoria.*

---

(3) Art. 741 del Código Civil, 31 L.P.R.A. sec. 2367; Art. 105 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2355.