Segarra Olivero, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Tenemos ante nuestra consideración dos recursos de apelación, los cuales hemos consolidado, toda vez que en ambos se solicita la revocación de una sentencia parcial emitida el 5 de febrero de 1995, por el Tribunal de Primera Instancia, Sala Superior de Ponce, caso JAC-85-1731, mediante la cual se determinó que es nulo el contrato de servicios profesionales objeto de análisis y se ordenó a la parte demandante-apelante de epígrafe a satisfacerle al Ledo. Flor Casiano Báez la suma de $175,000 por concepto de honorarios de abogado.
Por los fundamentos que más adelante expondremos, revocamos la sentencia apelada en lo relativo a su dictamen sobre la nulidad del contrato de servicios profesionales otorgado por el Ledo. Casiano Báez y la señora Rosa E. Fernández y se devuelve el caso al foro de origen para la celebración de una vista evidenciaría en la cual ambas oartes puedan aportar prueba sobre el valor razonable de los servicios prestados por el Ledo. Casiano Báez.
I
Antes de considerar los señalamientos contenidos en los recursos, conviene reseñar su trasfondo fáctico y procesal.
El 10 de febrero de 1982 y en el caso Civil Núm. RF-82805, la demandante, Rosa E. Sánchez, por conducto de su representación legal, Ledo. Casiano Báez, presentó una demanda sobre filiación y daños y perjuicios contra su alegado padre, el Sr. Francisco Fernández Rodríguez. En la primera causa *961 de acción se alegó "[q]ue la demandante es hija de Don Francisco Fernández y como tal tiene derecho a gozar de todos los privilegios y derechos de hija que la ley le concede". En la segunda causa de acción expuso "[qjue con la negativa maliciosa e intencionada del demandado a efectuar el reconocimiento legal como hija a la demandante le ha ocasionado daños, sufrimientos mentales y morales, valorados en una suma no menor de $60,000". El 28 de febrero de 1983, el Tribunal de Primera Instancia declaró sin lugar la demanda de filiación. La parte demandante solicitó la revisión de dicha sentencia ante el Tribunal Supremo, quien dejó sin efecto la misma y ordenó la devolución del caso para que se hicieran las pruebas científicas sobre determinación de paternidad.
Posteriormente, la Sra. Rosa E. Sánchez y el Ledo. Casiano Báez decidieron reducir a escrito el contrato de servicios profesionales que regiría la relación entre las partes. El 14 de noviembre de 1983 las partes otorgaron el contrato que es objeto de la presente controversia. El mismo lee como sigue:

"PRIMERO: Que la Sra. Rosa Esther Sánchez (la cliente) contrató y por este medio ratifica la contratación de los servicios profesionales del Ledo. Flor Casiano Báez (el abogado) para que le represente en el caso RF-82-205, sobre Filiación y Daños y Perjuicios, radicado en el Tribunal Superior, Sala de Ponce, cualquier otro pleito que se derive del presente caso con su alegado padre, así como las peticiones judiciales o administrativas que sean necesarias para hacer cumplir sus derechos como hija de Francisco Fernández Rodríguez, incluyendo la adjudicación de bienes presentes y futuros que le puedan corresponder como producto del pleito de filiación, incluyendo bienes hereditarios.

SEGUNDO: La representación expira al momento de la adjudicación de cada bien.

TERCERO: Convienen las partes comparecientes que los honorarios del abogado serán una tercera parte (1/3) del total del valor o precio de bienes adjudicados al momento de cada adjudicación, incluyendo bienes hereditarios que se le adjudiquen a la cliente como producto del caso de filiación.

CUARTO: Que a la firma del presente contrato, el caso de Filiación y Daños y Perjuicios original fue llevado por el abogado para Revisión ante el Tribunal Supremo de Puerto Rico, quien decidió en favor de la petición, sin que al abogado se le haya efectuado pago alguno por honorarios por esa revisión, y también ha representado a la cliente en el pleito original ante el Tribunal Superior, Sala de Ponce, sin haber recibido hasta el momento pago alguno por honorarios.

QUINTO: La cliente se compromete a no aceptar transacción alguna en relación con los hechos relacionados en el expositivo primero de este contrato sin el consentimiento expreso del abogado y notificará a éste inmediatamente sobre cualquier gestión a esos efectos, y el abogado se obliga a efectuar las gestiones que de su representación se deriven.

SEXTO: El presente contrato obliga a cualquier parte que sustituya a la cliente, y además esa es su voluntad expresa." (Enfasis nuestro).
Así las cosas, el 29 de febrero de 1984, el Tribunal de Primera Instancia, Sala Superior de Ponce, , declaró con lugar la demanda de filiación instada por la Sra. Rosa E. Sánchez. El Ledo. Casiano Báez continuó realizando gestiones en favor de la demandante, entre ellas la presentación de una solicitud de remedios bajo la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. IV, R. 56, y un recurso de injunction con el propósito de evitar que la parte demandada, Sr. Francisco Fernández y otros, dispusieran de sus bienes en perjuicio de la demandante. Luego de numerosos trámites, incluyendo la presentación de varias solicitudes de revisión ante el Tribunal Supremo, el tribunal a quo concedió el remedio solicitado bajo la Regla 56 de Procedimiento Civil, supra, y le ordenó al demandado Francisco Fernández, que se abstuviera de realizar enajenaciones, gravámenes y disposiciones de sus bienes sin autorización previa del tribunal.
El 15 de agosto de 1985, en el Caso Civil Núm. JAC-851731, la demandante presentó otra demanda contra su padre y otros demandados, la cual fue posteriormente enmendada, solicitando que se declarara a su padre incapacitado para administrar sus bienes, se declararan nulas todas las acciones realizadas de mala fe e indebidamente por la parte demandada, y se le nombrara tutora de su padre.
*962 Durante estos trámites, el 9 de febrero de 1988, Rosa E. Fernández falleció. El 14 de febrero de 1989, el Sr. Francisco Fernández fue declarado incapaz y varios meses después, murió.
El 3 de enero de 1990 se emitió sentencia declaratoria mediante la cual se declaró a Angel Luis y José Angel Cruz Fernández, hijos de la Sra. Rosa E. Fernández, únicos y universales herederos de Francisco Fernández. Estos sustituyeron a su madre en el pleito núm. JAC-85-1731. En lo sucesivo, nos referiremos a ellos como los demandantes. Angel Luis Cruz Fernández fue nombrado administrador provisional del caudal relicto del finado.
La tramitación de todos los asuntos antes descritos estuvo en manos del Ledo. Casiano Báez. Posteriormente, éste intentó cobrar lo que se le adeudaba por concepto de los servicios profesionales brindados. Los demandantes se negaron a satisfacerle la suma requerida, cuestionaron la validez del referido contrato y alegaron que no venían obligados a darle cumplimiento a un contrato que había sido suscrito por su madre sin el consentimiento de ellos. El 4 de febrero de 1992, los demandantes solicitaron por escrito la renuncia del Ledo. Casiano Báez como su representante legal.
El 21 de julio de 1992, el Ledo. Casiano Báez presentó demanda de intervención en el pleito que continuaba tramitándose en el Tribunal de Primera Instancia, Sala Superior de Ponce, JAC-85-1731, y solicitó el cumplimiento específico del contrato de servicios profesionales otorgado el 14 de noviembre de 1983. En dicha demanda, el Ledo. Casiano Báez expuso, en el inciso (4), lo siguiente:

"4. Que ya se han obtenido en favor de la parte demandante como producto de la labor y litigación llevada a cabo por el abogado suscribiente una serie de bienes y valores, a lo cual el abogado suscribiente tiene derecho a una tercera parte del valor final de los mismos y de su producto, a tenor con el contrato de representación legal, y los acuerdos entre las partes."

El 7 de agosto de 1992 el tribunal a quo autorizó la intervención solicitada. Los demandantes, en su contestación a la intervención, se negaron a pagarle al Ledo. Flor Casiano Báez la suma de $75,000.00 por concepto de honorarios de abogado.
El 30 de septiembre de 1992, el Ledo. Casiano Báez presentó Moción en Solicitud de Sentencia Parcial por Alegaciones y/o Sentencia Sumaria Parcial. Los demandantes se opusieron y alegaron que el referido contrato de servicios profesionales violaba las disposiciones del Canon 24 de Etica Profesional. Informaron, además, que habían presentado una querella contra el Ledo. Casiano ante la Comisión de Etica del Colegio de Abogados y solicitaron la paralización de los procedimientos hasta tanto se resolviera la misma. El 1 de abril de 1993, el Colegio de Abogados archivó la querella.
El 3 de mayo de 1993, el Tribunal de Primera Instancia dictó sentencia parcial en la que ordenó a los demandantes que cumplieran específicamente con el contrato de servicios profesionales otorgado por la Sra. Rosa E. Fernández y el Ledo. Casiano Báez el 14 de noviembre de 1983. Posteriormente, el 4 de junio de 1993, el Tribunal de Primera Instancia, en reconsideración, dejó sin efecto el referido dictamen y, a su vez, dispuso lo siguiente:

"El Ledo. Flor Casiano Báez debe someter al Tribunal un cálculo del número de horas trabajadas en el caso de filiación y en cualquier otro evento relacionado en que haya tenido participación como abogado hasta la fecha de su renuncia. Debe incluir además sus honorarios por hora en casos similares en complejidad al que nos ocupa".

Inconforme con este dictamen, el Ledo. Casiano Báez recurrió ante el Tribunal Supremo mediante solicitud de certiorari. El 10 de diciembre de 1993, el Tribunal Supremo dictó sentencia mediante la cual revocó la sentencia parcial dictada en reconsideración y en la que expresó que un examen del referido contrato de servicios profesionales no revelaba, de su faz, razón alguna en derecho para invalidarlo. Señaló, además, que toda vez que la sentencia parcial original, así como la emitida en reconsideración, habían sido dictadas sumariamente, debía devolverse el caso para la celebración de una vista evidenciaría para determinar si existían razones para invalidar o no honrar el contrato.
El 29 de septiembre de 1994, el Tribunal de Primera Instancia, en cumplimiento con las directrices emitidas por el Tribunal Supremo, celebró la vista evidenciaría, en la cual testificó ampliamente el *963 Ledo. Casiano Báez y se sometió cierta prueba documental. Obra en nuestro expediente la exposición narrativa de la prueba oral aportada en dicha vista, la cual fue aprobada por el Tribunal de Primera Instancia. De dicha exposición surge que, a preguntas del tribunal, el Ledo. Casiano Báez declaró que había trabajado sobre 4,000 horas desde que comenzó a laborar en el pleito de filiación y daños y perjuicios en 1981 y que no había llevado un recuento por hora de su trabajo porque entendía que el contrato de honorarios contingentes era válido. El Ledo. Casiano Báez declaró que estimaba que el valor de los bienes obtenidos en beneficio de su cliente ascendía a unos $750,000.00. Los demandantes no presentaron a ningún testigo.
El 6 de febrero de 1995, el Tribunal de Primera Instancia emitió la sentencia que nos ocupa, en la cual se analizó el contrato de servicios profesionales exhaustivamente y concluyó que el objeto del referido contrato era la herencia futura y, por tanto, el mismo era nulo por virtud de lo dispuesto en el Art. 1223 del Código Civil, 31 L.P.R.A. see. 3421. El tribunal recurrido, a la pág. 18 de su sentencia, expuso lo siguiente:

"A modo de conclusión; analizando el contrato de forma integral y a la luz de las circunstancias que dieron lugar al acuerdo y a los actos posteriores al mismo, surge con claridad que los honorarios de abogado pactados están basados en una contingencia sobre herencia futura. Así pues, en ausencia del objeto del contrato el mismo es nulo y no puede hacerse efectivo mediante ratificación. No es ratificable lo inexistente."

No obstante lo anterior, el tribunal a quo reconoció la existencia de la deuda que tenía la Sra. Rosa E. Fernández con el Ledo. Casiano Báez por los servicios profesionales que éste le brindó, deuda que fue heredada por sus hijos, los ahora demandantes. En adición, resolvió que los honorarios del Ledo. Casiano Báez debían ser satisfechos a base del principio de "quántum meruit".
En virtud de ello, el tribunal concluyó que:
"El licenciado Casiano Báez testificó que los servicios prestados en este caso ascienden aproximadamente a 4,000 horas. En vista de que éste no presentó documento alguno sobre registro de horas trabajadas en el mismo, nos corresponde, entonces, fijar las mismas. Para ello tomamos en consideración la labor que el abogado realizó en el caso de filiación y las instancias posteriores a la muerte de ésta, en beneficio de los demandantes (herederos) hasta que se le requirió y se hizo efectiva su renuncia.

Valoramos los servicios por hora del Ledo. Flor Casiano comparándolos con los cobrados por otros abogados en ese tiempo en esta jurisdicción en casos de similar complejidad en $70.00 la hora. Calculamos a base de la prueba desfilada que el abogado trabajó en el caso, un total de 2,500 horas."

Inconformes con dicho dictamen, los demandantes y aquí apelantes acudieron ante nos señalando la comisión de los siguientes errores:

"Erró el Honorable Tribunal de Instancia al resolver en la vista evidenciaría ordenada por el Hon. Tribunal Supremo exclusivamente con respecto al contrato sobre servicios profesionales, que había por el contrario que pagarle al abogado interventor por concepto de honorarios de abogado la suma de $175,000.00, todo ello en violación al principio constitucional sobre el debido proceso de ley.

Erró el Tribunal de Instancia al resolver en la misma vista evidenciaría ordenada, que había que pagársele la anterior suma de dinero al abogado interventor por el mismo concepto, con total ausencia de prueba para tal determinación y en violación también al debido proceso de ley."

Por otro lado, el interventor-apelado, el Ledo. Flor Casiano Báez, también acude ante nos y solicita la revocación de la sentencia parcial alegando que erró el tribunal a quo:

"...al emitir la Sentencia Parcial recurrida, contraria a derecho, o sea, contraria a lo resuelto por el honorable Tribunal Supremo de Puerto Rico, por Sentencia emitida el 10 de diciembre de 1993, 
*964
sobre la misma controversia y entre las mismas partes, y sin razón alguna en derecho para invalidar el contrato y sin haberlo invalidado.

...al determinar que el abogado interventor-recurrente trabajó 2,500 horas cuando la prueba admitida y no controvertida estableció que trabajó para los demandantes-recurridos sobre 4,000 horas.

...al determinar que nuestro Honorable Tribunal Supremo no tuvo ante sí todos los elementos de juicio para emitir la sentencia revocatoria de 10 de diciembre de 1993, sobre la misma cuestión y entre las mismas partes.

...al no hacer una determinación de temeridad solicitada contra los demandantes-recurridos e imponerle honorarios de abogado por temeridad en los procedimientos de intervención."
II
La controversia que presenta el caso de autos tiene su origen en el contrato de servicios profesionales suscrito el 14 de noviembre de 1983. Nos corresponde evaluar los términos de dicho contrato a los fines de dictaminar sobre su validez.
Los demandantes alegan que el contrato es nulo pues el objeto del mismo es la herencia futura, lo cual viola lo establecido en el Art. 1223 del Código Civil, supra. El tribunal a quo declaró nulo el contrato por este fundamento. Por su parte, el Ledo. Casiano Báez sostiene que el Tribunal Supremo, en la sentencia emitida el 10 de diciembre de 1993, ya había decretado la validez del referido contrato y, por tanto, el Tribunal de Primera Instancia no estaba facultado para volver a pasar juicio sobre dicha cuestión.
Como ya expusimos, el Tribunal Supremo expresó en la referida sentencia que un examen del contrato de servicios profesionales "no revela, de su faz, razón alguna en derecho para invalidarlo" y devolvió el caso al foro de origen para la celebración de una vista evidenciaría "para dilucidar si existen razones para invalidar o no honrar el contrato". No podemos concederle a estas expresiones el alcance que pretende el Ledo. Casiano Báez.
Nuestro Tribunal Supremo, sabiamente, expuso un criterio preliminar sobre la validez del contrato. Es a todas luces improcedente atribuirle a nuestro más Alto Foro el contrasentido de adjudicar de forma final la validez del contrato y, a su vez, devolver el caso al Tribunal de Primera Instancia para que dilucidara si existían razones para invalidar y no honrar el contrato.
Atinadamente el tribunal recurrido señaló en su sentencia parcial, que si el Tribunal Supremo hubiese resuelto que el contrato era válido "entonces se hubiera ordenado restablecer nuestra Sentencia Parcial Original", habida cuenta de que ése precisamente fue el dictamen emitido originalmente el 3 de mayo de 1993. Entendemos que lo expuesto por el Tribunal Supremo fue una determinación preliminar de la controversia planteada y no constituyó una decisión en los méritos en cuanto a la validez del referido contrato.
III
Aclarado este punto, expongamos el derecho aplicable.
El Art. 1223 del Código Civil, supra, dispone lo siguiente:

"Pueden ser objeto de los contratos todas las cosas que no estén fuera del comercio de los hombres, aun las futuras.

Sobre la herencia futura no se podrá, sin embargo, celebrar otros contratos que aquellos cuyo objeto sea practicar entre vivos la división de un caudal conforme a la see. 2875 de este título.

Pueden ser igualmente objeto de contrato todos los servicios que no sean contrarios a las leyes o a las buenas costumbres". (Enfasis nuestro) 
*965 El Profesor José Ramón Yélez Torres, en relación con este artículo, apunta lo siguiente:
"En cuanto a las cosas futuras, hay que tener en cuenta que si la cosa que es objeto del contrato no formara parte del patrimonio del obligado, entonces el contrato sería nulo. Por ello, las partes que contraten sobre cosas futuras deberán tomar las medidas necesarias para impedir que ocurra la anterior dificultad. Así, podría organizarse el negocio jurídico a base de una condición suspensiva o, simplemente a base de que una parte asuma el riesgo de que la cosa nunca llegue al patrimonio de la otra parte contratante". José R. Vélez Torres, Curso de Derecho Civil, Derecho de Contratos, San Juan, Revista Jurídica de la Universidad Interamericana de P.R., 1990, Tomo IV, Vol. II, pág. 69.
Por su parte, José Puig Brutau ha expresado que "la obligación de transmitir lo que todavía no es nuestro y sin que lo dejemos concretamente determinado, debe rechazarse no tanto por imposibilidad, sino por inmoralidad o ilicitud". José Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1988, Tomo II, Vol. I, pág. 116.
En el caso de Vargas v. Cruz, 34 D.P.R. 27 (1925), el Tribunal Supremo analizó un contrato mediante el cual una parte se obligó a darle al demandante la mitad de toda la herencia que pudiera corresponderle a la muerte de su padre, quien al momento del otorgamiento del referido contrato no había fallecido. El Tribunal Supremo resolvió que tal contrato era nulo por tener por objeto la herencia futura, situación prohibida por el entonces Art. 1238 del Código Civil Revisado, hoy Art. 1223 del Código Civil, supra. Allí se expresó que:

"En este caso el pacto implicaba la renuncia a la mitad de una herencia futura (non succedendo), pues su condición para tener efecto descansaba en el fallecimiento del padre natural de la demandada. Esta condición que para los romanos llevaba implícita, el votum capatandae mortis, el deseo de la muerte, fue la razón que desde entonces se tuvo para la prescripción de tales pactos...

En este caso el objeto sobre que recae la consideración o causa es la herencia futura, pues depende para diferirse de la muerte del padre de la demandada y en esto consiste la prohibición de ley". Id., a las págs. 29 y 30.
En Ab Intestato Saldaña Candelario, 126 D.P.R. 640 (1990), el Tribunal Supremo revocó una determinación del Tribunal de Primera Instancia mediante la cual se resolvió que una persona casada bajo el régimen de capitulaciones matrimoniales no tenía derecho a la cuota viudal usufructuaria. Los otorgantes de capitulaciones matrimoniales no podrán estipular nada que sea contrario a las leyes,’ a la moral o al orden público. Id., a la pág. 643. Concluyó, además, que toda vez que el Art. 1223 del Código Civil, supra, prohíbe la contratación sobre la herencia futura, los cónyuges no pueden renunciar en forma expresa o tácita al derecho de usufructo viudal. Id.
Por su parte, el Art. 118 del Código Civil, 31 L.P.R.A. see. 466, enumera los derechos que ostentan los hijos legítimos: "(1) [a] llevar los apellidos del padre y de la madre; (2) [a] recibir alimentos; (3) [a] la herencia legítima."
En el caso de autos, la demandante Rosa E. Fernández al ser declarada hija de Francisco Fernández adquirió inmediatamente el derecho a llevar el apellido de su padre y a solicitar alimentos, pero en lo que respecta a su condición de heredera sólo podía materializarse por el fallecimiento de su padre. Puesto en otros términos, si bien el derecho a obtener la herencia legítima le fue reconocido a la demandante al resultar victoriosa en el pleito sobre filiación, la adquisición de bienes de su padre sólo podía determinarse a la muerte de éste. Al momento de celebrarse el contrato de servicios profesionales, el Sr. Francisco Fernández no había muerto. No cabe duda alguna de que la demandante no adquirió bienes como consecuencia del dictamen sobre filiación.
En las cláusulas primera y tercera del contrato de servicios profesionales, las partes pactaron que el Ledo. Casiano representaría a la Sra. Rosa E. Fernández en la adjudicación de bienes presentes y futuros que le pudieran corresponder como producto del pleito de filiación, incluyendo bienes hereditarios, y que los honorarios profesionales del Ledo. Casiano serían 1/3 parte del total de dichos bienes adjudicados. Sin embargo, es un hecho indisputado que la Sra. Rosa E. Fernández no adquirió bien alguno como consecuencia del resultado del pleito de filiación. Es razonable, concluir, que los *966 honorarios contingentes pactados por el Ledo. Casiano se referían, exclusivamente, a los bienes hereditarios, si algunos, que obtuviese la Sra. Rosa E. Fernández, una vez muerto su padre.
Esta situación es similar a la planteada en el caso de Vargas v. Cruz, supra. En el caso de autos el pacto sobre honorarios de abogado implicaba la renuncia de 1/3 parte de los bienes que en su día pudiese obtener la Sra. Rosa E. Fernández, una vez muriera su padre. Los honorarios de abogado pactados estaban basados en una contingencia sobre herencia futura y, por tanto, el contrato de servicios profesionales es nulo.
IV
Declarado nulo el contrato de servicios profesionales, y en ausencia de convenio, es de aplicación el Art. 1473 del Código Civil, 31 L.P.R.A. see. 4111, el cual establece, en lo pertinente, que... "en cuanto a los servicios profesionales se estará para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte,...el importe razonable de dichos servicios ".
En este artículo queda plasmado el principio de quántum meruit (tanto como se merece) el cual establece el derecho a reclamar el valor razonable de los servicios prestados. Méndez de Rodríguez v. Morales Molina, _ D.P.R. _ (1996), 96 J.T.S. 149. De no poderse estimar los honorarios de abogado a base de cuotalitis, procede que los tribunales estimen una razonable compensación que retribuya adecuadamente la labor realizada por el abogado. Colón v. All American Life & Cas. Co., 110 D.P.R. 772, 777 (1981).
En Zequeira v. C.R.U.V., 83 D.P.R. 878 (1961), el Tribunal Supremo expresó que "[e]l valor razonable (quántum meruit) se usa cuando se trata de una obligación implícita que surge de un contrato invalidado por alguna irregularidad en la forma de ejecutarlo". (Citas omitidas.)
Para determinar la razonabilidad de los honorarios a los que tiene derecho un abogado por los servicios profesionales prestados, los tribunales pueden considerar los siguientes factores: (1) dificultad y complejidad de las cuestiones envueltas; (2) tiempo y trabajos requeridos; (3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares; (4) experiencia y prestigio del abogado. Véase, Pérez Marrero v. Colegio de Cirujanos Dentistas, _ D.P.R. _ (1992), 92 J.T.S. 124, nota núm. 14.
El tribunal recurrido concluyó que el Ledo. Casiano Báez había trabajado un total de 2,500 horas las cuales debían computarse a razón de $70.00 cada una. Los demandantes señalan en su recurso de apelación que incidió el tribunal a quo al así concluir por dos razones principales, a saber: (1) porque la referida vista fue celebrada únicamente con el propósito de dilucidar lo concerniente a la validez o no del referido contrato y no era un juicio para determinar el importe razonable de los servicios profesionales prestados por el Ledo. Casiano; y (2) porque no existe prueba alguna en el récord que sustente tal conclusión. Entendemos que les asiste la razón a los demandantes.
Un detenido examen de la transcripción de la vista nos permite concluir que la sala sentenciadora erró al calcular el monto de los honorarios de abogado que se le adeudaban al Ledo. Casiano Báez. Las partes no estaban preparadas para dilucidar la controversia relativa al valor razonable de la larga, ardua y fecunda labor del Ledo. Casiano Báez. Tampoco estaban en condiciones de aportar prueba sobre el cómputo de las horas trabajadas por el Ledo. Casiano.
A preguntas del Tribunal de Primera Instancia, e incidentalmente, salió a relucir en la vista del 29 de septiembre de 1994 lo relativo a las horas trabajadas. Conviene transcribir lo que allí se preguntó. Veamos.

".•...Déjeme hacerle una pregunta, Ledo. Casiano, antes que el abogado de los demandantes tenga la oportunidad su [sic] contrainterrogatorio. Usted ha hecho un cálculo.

En una ocasión, vuelvo, atrás, este Tribunal se refirió a una orden al número de horas trabajadas. Cosa que después dejamos sin efecto. ¿ Usted habrá hecho algún cálculo en relación a aquella orden 
*967
o en relación a la preparación del caso en cuanto al número de horas que usted trabajó en este caso? ¿A lo largo de estos años? Porque tenemos en el día de hoy que cubrió desde finales del año ochenta y uno (81) hasta marzo del noventa y dos (92).

LCDO. CASIANO: Mire Juez, con toda honestidad...

JUEZ: Por lo menos diez años.

LCDO. CASIANO:...En este caso yo, en cuestión de horas, con todos esos escritos y asuntos que hemos llevado al Supremo, yo he tenido que estar en mi casa haciéndolos hasta las dos y a las tres de la mañana en cada caso. Porque era yo solo, contra cinco y seis abogados. Yo estoy bien convencido que yo he trabajado más de, yo diría que sobre cuatro mil horas en este caso sólo, en todos esos diez años. PORQUE es lo que he hecho. Verdaderamente lo he hecho. Y ahí está mi esposa que es mi consuelo.

JUEZ: Está bien. Licenciado Amorós.

LCDO. AMOROS: ¿Sobre cuatro mil horas?

LCDO. CASIANO: Yo entiendo que sí.

LCDO. AMOROS: Fuera de su palabra, colega, no hay ningún documento, ningún "Time sheet" como le llaman los bufetes que usted haya sacado esa cifras de una...

JUEZ: Un momentito, Licenciado.

LCDO. EMMANUELLI: Respetuosamente, su Señoría, vamos a objetar porque aquí no se están reclamando horas, se están reclamando incumplimiento específico de un contrato.

JUEZ: Pero, vamos a declarar NO HA LUGAR a la objeción, porque fue una pregunta que yo le hice, ve, y a mi pregunta, el Licenciado Casiano ha contestado y obviamente él ha hecho un número que él piensa que fue así, pero que no se ha sentado, a calcularlo, que es la pregunta que hace el abogado. Vamos a permitirla.

LCDO. CASIANO: Sí, y se la voy a contestar. No lo tengo, porque precisamente, no esperaba que en ningún momento que fuera una liquidación por hora. Porque yo no tenía un contrato por hora. Aquí si aparecía algo, cobraba, si no, no cobraba.

LCDO. AMOROS: Es decir, a ver si acabo con esto, lo único que existiría sería el estimado que usted hace...

LCDO. CASIANO: Por horas no.

LCDO AMOROS: A vuelo de pájaros sobre el tiempo y las horas que...

LCDO. CASIANO: Sin faltarle el respeto, a vuelo de pájaros según usted lo dice.

LCDO. AMOROS: Pero dígame colega, ¿desde cuándo usted está ejerciendo la profesión?

LCDO. CASIANO: Desde el mil novecientos setenta y nueve (1979). Inmediatamente una vez...."

De lo anteriormente transcrito se desprende que fue la juez que presidió la vista quien trajo a colación, en forma incidental, la cuestión relativa al número de horas trabajadas. La declaración del Ledo. Casiano Báez a estos efectos fue muy vaga e imprecisa. Ciertamente, las partes no estaban en condiciones de discutir este asunto medular en la referida vista, pues no se les había apercibido que debían comparecer preparados para esos fines. El estimado general ofrecido por el Ledo. Casiano Báez de 4,000 horas trabajadas no es prueba suficiente del trabajo realizado. Por otra parte, la sala sentenciadora, sin explicación alguna, concluyó que el Ledo. Casiano Báez había trabajado unas 2,500 *968 horas —cómputo sustancialmente menor que el realizado por el Ledo. Casiano— y que cada hora debía computarse a $70.00. En el expediente ante nuestra consideración no existe documento alguno ni prueba testifical adicional que sustente la conclusión del Tribunal de Primera Instancia. La cantidad puede resultar mayor o menor que la aludida, pero el tribunal recurrido no estaba en condiciones para hacer dicha determinación en ese momento.
V
Por los fundamentos anteriormente expuestos, revocamos la sentencia apelada, salvo en lo relativo a su dictamen sobre la nulidad del contrato de servicios profesionales otorgado por el Ledo. Casiano Báez y la señora Rosa E. Fernández. Se devuelve el caso al foro de origen para la celebración de una vista evidenciaría en la cual ambas partes puedan aportar prueba sobre el tiempo invertido y el valor razonable de los servicios prestados por el Ledo. Casiano Báez.
Así lo pronunció y lo manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 63
1. En lo sucesivo, nos referiremos a la Sra. Rosa E. Sánchez como Rosa E. Fernández.
2. Por su parte, el Art. 1009 del Código Civil, 31 L.P.R.A. see. 2875, dispone que:

"Cuando el testador hiciere, por acto entre vivos o por última voluntad, la partición de sus bienes, se pasará por ella en cuanto no perjudique la legítima de los herederos forzosos.

El padre que en interés de su familia quiere conservar indivisa una explotación agrícola, industrial o fabril, podrá usar de la facultad concedida en esta sección, disponiendo que se satisfaga en metálico su legítima a los demás hijos".