JOSE LLOVERAS SAN MIGUEL
Parte Apelante

v.

ANA GRECIA MENDEZ MENDEZ
Parte Apelada

Núm. KLAN-99-00787

San Juan, Puerto Rico, a 11 de abril de 2000

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano,
el Juez Aponte Jiménez y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

RECEIVED

DEC 1 4 2000

SERIALS DEPT
HARVARD LAW SCHOOL LIBRARY

## TEXTO COMPLETO DE LA SENTENCIA

El apelante, José Lloveras San Miguel, recurre insatisfecho de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, de 14 de junio de 1999, que desestimó con perjuicio una demanda sobre rendición de cuentas contra los apelados Ana Grecia Méndez Méndez y The Contact Group, Inc.

La adecuada comprensión del asunto ante nuestra consideración requiere que expongamos brevemente el trasfondo fáctico y procesal del caso, según surge del expediente.

## I

El apelante contrajo matrimonio con la co-apelada Méndez Méndez el 10 de febrero de 1990. Estos suscribieron capitulaciones matrimoniales. En éstas se estableció, entre otras cosas, el régimen económico bajo el cual se manejarían las finanzas del hogar marital. Este fungió como oficial de The Contact Group, Inc., corporación autorizada para hacer negocios en Puerto Rico, de la cual la co-apelada Méndez Méndez era su única accionista, desde 1994 hasta 1996.

El 24 de enero de 1997, el apelante presentó una demanda por rendición de cuentas contra los aquí apelados, KAC-97-0076, la cual fue contestada por éstos y a su vez se presentó reconvención. En su demanda alegó que la co-apelada Méndez Méndez actuó de mala fe y lo privó de su derecho como accionista, oficial y director de la corporación. Reclamó el pago de dividendos, salarios, y el que se le proveyera de información relacionada con el funcionamiento de la corporación.

Así las cosas, la co-apelada Méndez Méndez presentó una demanda en cobro de dinero contra el apelante para que éste sufragara todos los gastos del hogar marital, KAC-97-0488. Dicha demanda fue consolidada junto con la demanda presentada por éste.

El 15 de julio de 1998, la co-apelada Méndez Méndez solicitó que se impusiera al apelante una fianza de no residente, ya que éste se encontraba residiendo en la República de Venezuela realizando labores profesionales. El tribunal de instancia señaló vista para dilucidar el asunto el 22 de octubre de 1998 y, además, ordenó al apelante a comparecer a una toma de deposición a celebrarse el 30 de octubre de 1998.

Este asistió a la deposición. Sin embargo, el abogado de los apelados decidió, luego de media hora, que no continuaría con la deposición por no contestar el apelante a sus preguntas. Escrito de Apelación, a la pág. 3. El 4 de diciembre de 1998, los apelados notificaron al apelante que la deposición se llevaría a cabo el 11 de diciembre del mismo año. Este no asistió a la deposición y no fue hasta el 22 de diciembre de 1998 que el tribunal *a quo* recibió una moción para solicitar protección.

Anteriormente, el 20 de noviembre de 1998, el tribunal de instancia ordenó al apelante prestar una fianza de no residente de veinte mil dólares ($20,000), o diez mil dólares ($10,000) por cada co-demandado. Luego, ante una solicitud de reconsideración presentada por él, se disminuyó a doce mil dólares ($12,0000) la fianza de no residente que le impusieron. El tribunal le notificó que de no pagar la fianza dentro de los treinta días siguientes a la notificación, se le desestimaría la demanda. Además, se notificó que los señalamientos de la conferencia con antelación a juicio y la vista en su fondo estarían para el 19 de enero y 27 de enero de 1999, respectivamente.

El 8 de enero de 1999, el tribunal le impuso la primera sanción al apelante de cincuenta dólares ($50). Se le ordenó comparecer el 18 de enero de 1999 a una deposición ante el abogado de la co-apelada Méndez Méndez. El tribunal notificó también a las partes que la vista en su fondo se celebraría el 27 de enero de 1999 y que el 19 del mismo mes tenían que presentar el Informe de Conferencia con Antelación a Juicio.

En la vista celebrada el 19 de enero de 1999, el abogado del apelante le notificó al tribunal que éste no se

presentó a una deposición señalada para el 18 de enero de 1999, sin haber cursado comunicación alguna para excusarse. Ante esta situación, el tribunal le impuso una segunda sanción por la cantidad de mil quinientos dólares ($1,500), ordenándole, so pena de sancionarlo, con la eliminación de sus alegaciones en el pleito y que compareciera el 21 de enero de 1999 para la toma de otra deposición. El apelante no presentó su parte del informe de conferencia con antelación al juicio ni se reunió con la representación legal de los apelados.

El tribunal le ordenó que notificara su parte del informe de conferencia ese mismo día. Además le advirtió que de no prestar la fianza de no residente y responder a las sanciones impuestas en un término de cuarenta y ocho (48) horas, su demanda sería desestimada.

El 26 de enero de 1999, ante el incumplimiento reiterado del apelante, el tribunal *a quo* desestimó la demanda y eliminó sus defensas afirmativas en la demanda presentada por la co-apelada Méndez Méndez contra él. El 27 de enero de 1999, se celebró la vista en su fondo sin que el apelante compareciera, a pesar de que su representante legal había informado que estaría presente.

El 14 de junio de 1999, el tribunal de instancia dictó sentencia final en el caso del apelante, KAC-97-0076, y parcial en el caso de la co-apelada Méndez Méndez, KAC-97-0076, en la cual plasmaba lo dictado el 26 de enero de 1999 y, además, desestimó la reconvención. El tribunal también ordenó la celebración de una vista para determinar la cuantía a pagar por el apelante en cuanto a su obligación de sostener el hogar marital basada en las capitulaciones matrimoniales.

Inconforme, comparece ante nos. En su recurso ante este Tribunal, plantea que erró el tribunal de instancia al desestimar con perjuicio la demanda presentada, imponer la cantidad de $10,000 por concepto de honorarios de abogados y obligarlo a cumplir con lo estipulado en las capitulaciones matrimoniales. La apelada dio por sometido el asunto para adjudicación por el expediente. Por las consideraciones que discutiremos, se expide el auto de *certiorari* solicitado a los fines de modificar la sentencia apelada.

**II**

La Regla 39.2(a) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, autoriza a un tribunal a decretar la desestimación de un litigio, cuando un demandante *"dejare de cumplir con estas reglas o con cualquier orden del tribunal"*.

Si bien es cierto que como regla general no se favorece la privación de su día en corte a un litigante, la desestimación procede en caso que no hay duda de la grave e injustificada falta de diligencia de la parte contra quien se toma la acción. *Banco de la Vivienda v. Carlo Ortiz,* 130 D.P.R. 730 (1992) Por ello, los tribunales mantenemos la política de que los casos se ventilen en su fondo y que la desestimación de un caso sin entrar en los méritos, como sanción, debe ser de los últimos recursos a utilizar. *Echevarría Jiménez v. Sucn. Pérez Meri,* 123 D.P.R. 664 (1989).

El Tribunal Supremo ha establecido las normas a seguirse en los casos en que el proceder de un litigante y su abogado justifica la desestimación como sanción. Así, en *Maldonado v. Srio. de Rec. Naturales,* 113 D.P.R. 494, 498 (1982), expresó que planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerite la imposición de sanciones, el tribunal debe imponer las mismas al abogado de la parte. Si esta acción disciplinaria no produce frutos positivos, entonces se procederá a imponer la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones, tan sólo después que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida.

Si la parte que haya sido informada y apercibida de la clase de situación no toma acción correctiva, no puede luego querellarse, ante ningún foro, de que se le despojó injustificadamente de su causa de acción, defensas o ambas. *Dávila v. Hosp. San Miguel, Inc.,* 117 D.P.R. 807, 814 (1986); *Echevarría Jiménez v. Sucn.*

*Pérez Meri, supra,* a la pág. 674.

En resumen, en aquellos casos en que una parte incumpla con el ordenamiento procesal vigente, el tribunal de instancia deberá imponer sanciones económicas a la parte o su abogado antes de desestimar el caso y privar a una parte de su día en corte. *Imp. Vilcá, Inc. v. Hogares Crea, Inc.,* 118 D.P.R. 679, 686 (1987).

En el caso de autos, el tribunal *a quo* le informó en varias ocasiones, tanto a la representación legal del apelante como a éste, de los procedimientos y sus consecuencias, y se les apercibió, también, en más de una ocasión, de las sanciones que acarrearía su falta de cumplimiento y diligencia. A pesar de estas advertencias, el apelante no actuó con la diligenciada debida.

El tribunal de instancia tuvo que intervenir en dos ocasiones en el descubrimiento de prueba para imponerle sanciones al apelante quien no compareció a dos deposiciones. La incomparecencia de él a las deposiciones citadas retrasó los· procedimientos y demostró falta de diligencia y dejadez para cumplir con las órdenes del tribunal *a quo.* Tampoco presentó su parte del informe de conferencia con antelación a juicio ni se reunió con la representación legal de los apelados. A pesar de que el tribunal de instancia le permitió expresarse en cuarenta y ocho (48) horas en cuanto a éstas y otras situaciones, el apelante nuevamente incumplió.

Finalmente, no cumplió con la orden del tribunal de instancia para que prestara fianza de no residente. Esto, luego que el tribunal acogiera su moción de reconsideración y redujera las sumas de las fianzas a prestarse. En definitiva, el tribunal de instancia apercibió al apelante de las consecuencias de incumplir con las órdenes del tribunal, sin que éste demostrara una mayor diligencia. Por lo que actuó el tribunal correctamente al desestimar la demanda presentada por el apelante.

### III

Ahora bien, el apelante alega que incidió el tribunal de instancia al establecer que él estaba obligado a cumplir con todo lo estipulado en las capitulaciones matrimoniales que, por razón de matrimonio, suscribió con la co-apelada Méndez Méndez. Básicamente, señala que las capitulaciones matrimoniales fueron modificadas por las actuaciones de las partes durante el matrimonio.

Debemos señalar que el tribunal de instancia eliminó las defensas afirmativas del apelante en la demanda presentada contra éste por la co-apelada Méndez Méndez. El tribunal no entró a discutir en sus méritos los planteamientos que éste nos presenta. Se ha resuelto por nuestro más alto foro que un tribunal apelativo no tiene la obligación de discutir aquellos errores no discutidos. *"Los tribunales de apelación no vienen obligados a discutir aquellos planteamienos que no fueron objeto de discusión por el tribunal de instancia ni las partes."* *Pueblo v. Rivera Rodríguez,* 123 D.P.R. 467 (1989) En el presente caso, una vez eliminadas las alegaciones, no tenía el tribunal de instancia que discutir las defensas expuestas en las mismas.

No obstante, habremos de hacer los siguientes señalamientos. De ordinario, las capitulaciones matrimoniales y las modificaciones que se hagan en ellas deben constar por escritura pública otorgada antes de la celebración del matrimonio, salvo cuando los bienes que se aportan al matrimonio sean los que se indican en el Artículo 1276 del Código Civil, 31 L.P.R.A. §3560. Se permite, de este modo, que los otorgantes adopten cláusulas para, *inter alia,* declinar las deudas privativas de su pareja que de otro modo serían imputables a la sociedad legal de bienes gananciales, bajo el Artículo 1308 del Código Civil, 31 L.P.R.A. sec. 3661.

Específicamente, bajo la libertad de pacto provista por el Código Civil, la pareja puede optar por: (1) la separación de bienes, pero con participación de ganancias; (2) una sociedad de bienes gananciales para lo cual basta con guardar silencio y no estipular nada o estipularlo expresamente; (3) renunciar al régimen legal de gananciales; (4) total separación de bienes; (5) elegir cualquier otro régimen que combine estas posibilidades. *Domínguez Maldonado v. Estado Libre Asociado,* 137 D.P.R. ___ (1995), **95 J.T.S. 16,** a la pág. 638; *Ab Intestato Saldaña Candelario,* 126 D.P.R. 640, 643 (1990); *Umpierre v. Torres Díaz,* 114 D.P.R. 449, 459

(1983).

La autonomía de la voluntad de las partes que otorgan capitulaciones, no es, sin embargo, absoluta. Al igual que en otros contratos, no pueden otorgarse pactos contrarios a las leyes o las buenas costumbres ni depresivos de la autoridad que respectivamente corresponda en la familia a los futuros cónyuges. 31 L.P.R.A. sec. 3552; *Domínguez Maldonado v. Estado Libre Asociado, supra; Ab Intestato Saldaña Candelario, supra; Umpierre v. Torres Díaz, supra.*

Contrario a la tendencia en otras jurisdicciones civilistas, en Puerto Rico rige la doctrina de la inmutabilidad de las capitulaciones matrimoniales. Estas no pueden ser alteradas, una vez se ha llevado a cabo el matrimonio. *Domínguez Maldonado v. Estado Libre Asociado, supra; Umpierre v. Torres Díaz, supra; Vilariño Martínez v. Registrador,* 88 D.P.R. 288, 296 (1963).

Por lo tanto, aun cuando consideramos este planteamiento, no podríamos interpretar las capitulaciones matrimoniales de forma tal que entendamos que las mismas fueron modificadas por las actuaciones de las partes y, mucho menos, por novación del acuerdo. El estado de derecho actual no permite modificación alguna de las capitulaciones matrimoniales posterior a contraído el matrimonio. Ciertamente, estamos ante un contrato *sui generis* que revierte gran interés del estado y que no le aplican todas las doctrinas, principios y reglas que le aplican a los contratos generales y especiales.

## IV

En su recurso, éste plantea que el Tribunal de Primera Instancia erró al imponer una cuantía exageradamente alta de honorarios de abogado. La Regla 44.1(d) de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), autoriza al Tribunal a que en su sentencia le imponga a una parte en un pleito que a su juicio ha actuado con temeridad, el pago de una suma por concepto de honorarios de abogado.

El propósito de la imposición de honorarios de abogado es el de sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito. *Fernández v. S.J. Cement,* 118 D.P.R. 713, 718 (1987); *Soto v. Lugo,* 76 D.P.R. 444, 448 (1954). El Tribunal Supremo ha señalado que se condenará a una parte al pago de honorarios de abogado cuando esta parte *"haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente, o produzca la necesidad de que la otra parte incurra en gestiones evitables". Elba A.B.M. v. U.P.R.* 125 D.P.R. 294 (1990); *Méndez de Rodríguez v. Morales Molina,* \_\_\_ D.P.R. 142 (1996), **96 J.T.S. 149**, 349*; Oliveras, Inc. v. Universal Insurance Company,* 141 D.P.R. \_\_\_ (1996), **96 J.T.S. 145**; *Hawayek v. A.F.F.,* 123 D.P.R. 526, 537 (1989).

La determinación de si una parte ha sido temeraria o no, recae en la discreción del tribunal de instancia. Una vez se determina tal temeridad, el tribunal tiene la obligación de imponer en la sentencia el pago de una suma por concepto de honorarios de abogado. *Vega v. Luna Torres,* 126 D.P.R. 370 (1990). Los tribunales de apelaciones no debemos intervenir con dicha determinación a menos que la parte adversamente afectada por la misma demuestre que el tribunal sentenciador ha abusado de su discreción o que ha impuesto una partida excesiva en concepto de honorarios de abogado. *Cotto Morales v. Calo Ríos,* 140 D.P.R. \_\_\_ (1996), **96 J.T.S. 56**; *CNA Casualty de Puerto Rico v. Torres Díaz,* 141 D.P.R. \_\_\_ (1996), **96 J.T.S. 85**; *Elba A.B.M. v. U.P.R., supra; Ramírez v. Club Cala de Palmas,* 123 D.P.R. 339 (1989).

En el caso de autos, ciertamente no fue el apelante temerario al incoar su demanda de rendición de cuentas contra los apelados. La demanda no demuestra frivolidad o que la misma estuviere desprovista de fundamentos. Tampoco se demostró que el apelado pudiera evitar el presente pleito.

Además, en el presente caso no se produjo una parte victoriosa. Tanto la demanda como aquella parte de la reconvención que estaba relacionada a las alegaciones de la demanda, fueron desestimadas por el tribunal *a quo.*

Si bien es cierto que el tribunal de instancia tiene, aun en aquellos casos en que no ha habido parte victoriosa, la discreción de otorgar honorarios, ésta no es absoluta. En este caso, ambos pleitos fueron declarados sin lugar por básicamente los mismos fundamentos, sin que estuvieran presentes los requisitos para la imposición de honorarios de abogado. Lo que nos lleva a concluir que, en vista de ello y de que se impusieron sanciones de otra naturaleza al apelante, no procedía la imposición de honorarios de abogado.

En definitiva, los hechos de este caso nos llevan a intervenir en la determinación del tribunal de instancia a los efectos de eliminar la partida de honorarios de abogado, ciertamente excesiva, impuesta al apelante.

**V**

Por los fundamentos antes expuestos, se modifica la sentencia apelada a los únicos fines de eliminar la partida de honorarios de abogados y así modificada se confirma la misma.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General