# 98 DTA 141

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE MAYAGÜEZ Y AGUADILLA**

LORENA GARCIA TORRES Y
JAIME O. MONAGAS ACOSTA
Peticionarios

EX PARTE

Núm. KLCE-96-00556

San Juan, Puerto Rico, a 26 de marzo de 1998

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Feliciano Acevedo

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La peticionaria, Lorena García Torres, en representación de su hija menor Lorena Marie Monagas García, solicita la revocación de una resolución emitida el 5 de mayo de 1996 por el Tribunal de Primera Instancia, Sala Superior de Mayaguez, en el procedimiento sobre rebaja de pensión alimentaria iniciado contra la parte peticionaria por el recurrido Jaime Oscar Monagas Acosta, padre de la menor. Mediante el dictamen en cuestión, el Tribunal declaró que los ingresos de la recurrida Maritza Vélez Vélez, actual esposa del recurrido, no estaban sujetos a ser considerados para la fijación de la cuantía de la pensión alimentaria de la menor, por haber otorgado los recurridos capitulaciones matrimoniales.

Adoptamos esencialmente el razonamiento de la ilustrada Sala recurrida, pero modificamos su dictamen para indicar el modo y las circunstancias en las cuales, a juicio de este Tribunal, los ingresos de la recurrida podrían ser tomados en consideración para la fijación de la pensión alimentaria de la menor. Devolvemos el caso al Tribunal de Primera Instancia para la determinación correspondiente.

Según surge del récord, la Sra. García Torres y el Sr. Monagas Acosta contrajeron matrimonio el 28 de junio de 1990 en Yauco, Puerto Rico. Durante su matrimonio, los esposos Monagas García adoptaron a la menor Lorena Marie Monagas García, de entonces cuatro (4) años de edad.

El 31 de octubre de 1990, los esposos Monagas García solicitaron la disolución de su matrimonio por mutuo acuerdo. El 16 de noviembre de 1990, el Tribunal Superior, Sala de Ponce, dictó sentencia de divorcio, recogiendo los acuerdos entre las partes.

Entre otras estipulaciones, las partes acordaron que la custodia y patria potestad de la menor fuera otorgada a la madre y que el Sr. Monagas Acosta pagaría una pensión alimentaria para beneficio de

ésta de $650.00 y que, además, se haría cargo de pagar la cubierta del plan médico de la menor. El Sr. Monagas se relacionaría con la menor los sábados y domingos de 9:00 a.m. a 6:00 p.m. en fines de semanas alternos. La pensión debía ser entregada a la Sra. García a razón de $300.00 los días 10 de cada mes y $350.00 los días 25.

En cuanto a la liquidación de la sociedad de gananciales por ellos compuesta, las partes estipularon la división en partes iguales de los $32,054.00 que constituían el único haber ganancial.

El recurrido sufragó la pensión estipulada hasta junio de 1991, lo que alegadamente realizó mediante su participación de la liquidación de la sociedad conyugal, ascendente a $13,527.00, y con los ingresos provenientes de su trabajo.

El 6 de agosto de 1991, el recurrido presentó una solicitud de rebaja de su pensión al Tribunal en la cual suplicaba que la pensión fuese reducida de $650.00 a $250.00 mensuales. El recurrido justificó la rebaja, alegando que la misma obedecía a una reducción considerable en su salario debido a circunstancias atribuibles a su patrono. La apelante se opuso a la solicitud del Sr. Monagas.

Luego de varios incidentes procesales, el 30 de enero de 1992, el caso fue trasladado al Tribunal Superior de Mayaguez. Se celebró una vista ante la Examinadora de Pensiones Alimentarias, quien, el 1 de agosto de 1992, rindió un informe concluyendo que el recurrido no había demostrado un cambio sustancial en sus circunstancias y recomendando se denegara la rebaja solicitada.

El 19 de agosto de 1992, el Tribunal acogió la recomendación de la Examinadora y declaró no ha lugar la solicitud de rebaja de pensión del Sr. Monagas Acosta. El recurrido solicitó la reconsideración del dictamen, la que fue similarmente denegada el 20 de agosto de 1992.

Posteriormente, el 26 de marzo de 1993, el Sr. Monagas Acosta solicitó nuevamente que su pensión fuera rebajada y que la misma fuera fijada conforme a las Guías a base de un cambio en sus ingresos atribuibles a su trabajo. Además, consignó en el Tribunal la suma de $5,306.00 para poner al día los pagos atrasados de la misma. La nueva moción de rebaja fue referida a la Examinadora para celebrar una vista el 20 de mayo de 1993.

Para esta fecha, el Sr. Monagas se hallaba próximo a contraer un nuevo matrimonio, esta vez con la Sra. Maritza Vélez Vélez.

El 28 de julio de 1993, en Mayaguez, Puerto Rico, el Sr. Monagas y la Sra. Vélez otorgaron la Escritura Núm. 41 sobre Capitulaciones Matrimoniales ante el notario Julio Silva Ayala. En la referida escritura, los recurridos expresaron que deseaban *"mantener separadamente la propiedad y administración de todos sus respectivos bienes presentes y futuros"* y que habían convenido que ambos cónyuges *"tendrán la libre administración de sus respectivos bienes propios y podrán disponer de ellos sin intervención, limitación, ni necesidad de consentimiento alguno del otro, pudiendo realizar toda clase de operaciones sin necesidad de licencias o consentimientos."* Los recurridos pactaron que su matrimonio no estaría sujeto al régimen de sociedad de bienes gananciales provisto por ley y que *"el capital, así como las deudas personales de cada uno, se considerarán privativos suyos, sujeto a su exclusiva administración, así como también de los muebles e inmuebles, derechos reales y personales, pudiendo adquirirlos, transmitirlos, enajenarlos, venderlos, traspasarlos, permutarlos, y gravarlos, sin limitación alguna, y sin el consentimiento del otro cónyuge."*

Acordaron, asimismo, que los ingresos de cada uno, así como rentas, intereses y créditos devengados por estos bienes muebles e inmuebles, pertenecerían al propietario y que las deudas contraídas antes del matrimonio serían pagadas con el producto del trabajo de cada cual.

La cláusula sexta de las Capitulaciones establecía que:

*"Es convenido además, que el compareciente, DON JAIME OSCAR MONAGAS ACOSTA será responsable del mantenimiento de su hija procreada antes del presente matrimonio; y la compareciente DOÑA MARITZA VELEZ VELEZ no aportará para la manutención, mantenimiento ni educación de dicha menor. En caso de procrearse hijos en este matrimonio, su educación y*

*mantenimiento será por partes iguales entre los comparecientes."*

Luego de otros incidentes procesales, el 2 de febrero de 1994, la peticionaria solicitó permiso para incluir como tercera demandada a la actual esposa del recurrido, alegando que la obligación de alimentar a la menor era imputable a la sociedad conyugal de los recurridos.

La Sra. Vélez contestó la demanda y negó las alegaciones. Argumentó, específicamente, que su matrimonio con el Sr. Monagas había sido contraído bajo el régimen de separación de bienes mediante el otorgamiento de capitulaciones matrimoniales, y que, conforme a dicho acuerdo, la recurrida no tenía responsabilidad alguna por los alimentos de la menor.

El 15 de agosto de 1994 la peticionaria solicitó al Tribunal la anulación de las capitulaciones otorgadas por los recurridos.

El 25 de marzo de 1995, mientras el asunto estaba pendiente, el recurrido nuevamente solicitó una rebaja de la pensión alimentaria. El 31 de mayo de 1995 las partes estipularon que se rebajara provisionalmente la pensión a $331.50 mensuales, en tanto se dilucidaba la controversia en torno a la validez de las capitulaciones. El Tribunal emitió una orden de retención en el origen dirigida al patrono del Sr. Monagas Acosta para que le retuviera $76.50 semanales.

Luego de otros incidentes, el 6 de mayo de 1996, mediante una extensa y bien fundamentada resolución, el Tribunal de Primera Instancia declaró no ha lugar la moción de la peticionaria para que se decretara la nulidad de la escritura de capitulaciones matrimoniales otorgadas por los recurridos.

En su resolución, el Tribunal observó que la responsabilidad primaria por el mantenimiento de sus hijos corresponde a los padres biológicos. Concluyó que la obligación impuesta a la sociedad de bienes gananciales por el artículo 1308 del Código Civil, 31 L.P.R.A. sec. 3661, de proveer sostenimiento a los hijos habidos por los cónyuges en un matrimonio anterior con otras personas, es una carga de naturaleza más bien subsidiaria y que la responsabilidad primaria de satisfacer esta obligación corresponde a los padres biológicos.

El Tribunal concluyó que el artículo 1308 autoriza que los alimentos sean cobrados de los bienes de la nueva sociedad de bienes gananciales y que ésta haga los adelantos necesarios para satisfacer esta carga, sin que ello implique, de otro modo, que el cónyuge que no es padre del menor tenga una responsabilidad personal por esta obligación. Dicha parte, según el Tribunal, es un tercero, un *"extraño"* con respecto al menor, que no cuenta con una responsabilidad por el mantenimiento de éste, más allá de su lazo matrimonial con uno de sus padres biológicos. Véanse las págs. 11-27 de la resolución recurrida.

El Tribunal también concluyó que nuestro ordenamiento autoriza expresamente el otorgamiento de capitulaciones matrimoniales para pactar la separación de los bienes de los cónyuges. Se permite, mediante estos pactos, que los contrayentes de un matrimonio no asuman las cargas privativas de sus consortes, incluyendo la obligación de alimentar a los hijos de un matrimonio o relación anterior. Conforme a lo anterior, razonó el Tribunal, este tipo de pacto no resulta contrario al orden público. *Id.,* a las págs. 27-58.

El Tribunal rechazó que, en este tipo de situaciones, pueda plantearse la existencia de un fraude de acreedores, expresando:

*"[E]n la situación del progenitor divorciado que no tiene la patria potestad, su responsabilidad de prestar alimentos es personalísima e intransferible, ... Sólo su patrimonio responde por dicha obligación y está sujeto a los medios de aseguramiento que dispone la Ley de Sustento de Menores. No existe en el panorama jurídico, en tal situación, un tercero que sea solidariamente obligado a proveer dichos alimentos, excepto los parientes, y sólo de manera subsidiaria.*

*El discurso del fraude de acreedores, frente al subsiguiente matrimonio del progenitor alimentante -deudor- mediante pacto capitular de exclusión expresa de la sociedad de gananciales, presente y futura y de exclusión de responsabilidad por los alimentos y educación de los hijos del progenitor, en*

*un matrimonio bajo el régimen económico de separación total de bienes, parte -erróneamente- de la premisa de que el nuevo consorte se convierte, por el mero hecho del matrimonio, en deudor del hijo, o alternativamente, en un deudor del progenitor, capacidad que ostentaría con anterioridad a la celebración del matrimonio, o por razón de éste. ... [Pero] antes del matrimonio, en el acto de suscribir las capitulaciones, claramente el futuro consorte extraño no guarda relación jurídica obligacional frente al hijo del progenitor y, generalmente, ni siquiera frente al futuro cónyuge. El futuro consorte es un extraño. La obligación alimentaria del progenitor sigue siendo personalísima e intransferible, sujetándose a la misma todos sus bienes. En tal supuesto, no puede decirse existe una relación entre el hijo y el tercero que pudiera activar la presunción de fraude de acreedores que dispone el artículo 1249 del Código Civil, 31 L.P.R.A. 3498, puesto que en el fraude de acreedores lo que se pretende hacer es desaparecer, enajenar u ocultar los bienes del obligado en perjuicio del acreedor. Mediante la capitulación que tratamos, lo que se pretende separar de la garantía, del pago de alimentos, son los bienes del nuevo consorte extraño y no vinculado a la obligación alimentaria original, pues la responsabilidad es y sigue siendo personalísima del progenitor."*

*Id.*, a las págs. 42-43.

El Tribunal también concluyó que si se puede demostrar la existencia de pacto de separación de bienes entre los nuevos cónyuges, éstos vienen obligados a cumplirlo de buena fe, y es obligación del Tribunal ponerlo en vigor. *Id.*, a la pág. 53. Añadió:

*"Si no existe sociedad de gananciales, por así haberse pactado, ni existe otro régimen económico donde el alimentante tenga participación, ... [los] bienes del otro cónyuge, de ese "extraño", no son bienes sujetos ni al cómputo ni al pago de la pensión alimentaria. No son bienes ni capital del alimentante.*

*Existirá responsabilidad, sólo en los bienes en que el alimentante tenga interés económico o que puedan ser calificados como si fueran gananciales, o comunitarios, para que, en su caso y a prorrata de la participación, respondan del cómputo, y en segunda instancia y subsidiariamente, respondan del pago de la deuda, reteniendo el otro cónyuge el derecho a crédito al momento de la disolución del régimen económico."*

*Id.*, a la pág. 57.

El Tribunal determinó que: *"ante la clara exclusión del régimen económico de sociedad de gananciales y la existencia de la separación total de bienes en el pacto capitular, sólo los bienes y el patrimonio del demandado Jaime O. Monagas Acosta, incluyendo aquellos en que tenga participación o interés económico propio y se hayan adquirido luego del matrimonio con la interventora, Sra. Maritza Vélez Vélez, están sujetos a evaluación a los fines de determinar la cuantía, y el pago de la pensión alimentaria de los hijos del señor Monagas."* *Id.*, a la pág. 58.

Insatisfecha, la peticionaria acudió ante este Tribunal. Mediante resolución del 30 de junio de 1996, expedimos el auto solicitado.

En su recurso, la peticionaria plantea que erró el Tribunal al conferirle efectividad a la cláusula sexta de las capitulaciones matrimoniales suscritas por los recurridos, mediante la cual dichas partes acordaron que la recurrida no tendría responsabilidad alguna por el mantenimiento de la menor. La peticionaria plantea que este tipo de acuerdos son contrarios a la política pública del Estado Libre Asociado.

Recientemente, el Tribunal Supremo de Puerto Rico consideró un planteamiento similar, que había sido declarado con lugar por el Tribunal de Primera Instancia. Véase, *Cepeda Torres v. García Ortiz*, __ D.P.R. __ (1993), **93 J.T.S. 20**. El Tribunal Supremo, sin embargo, no llegó a adjudicar en sus méritos la controversia, por no haber sido incluido en el procedimiento el nuevo cónyuge, quien constituia una parte indispensable. *Id.*, a la pág. 10,396. ■ El caso fue devuelto al Tribunal inferior para la inclusión de dicha parte.

Este Tribunal ha permanecido en espera de la decisión del Tribunal Supremo en torno a este

problema. No obstante, dicha superioridad no ha tenido una nueva oportunidad de considerar la cuestión, por lo que nos vemos en la obligación de ensayar una solución a la misma, utilizando nuestro mejor discernimiento para arribar a un resultado razonable que atienda los diferentes intereses en conflicto.

El planteamiento de la peticionaria constituye, en gran medida, un ataque frontal a la validez de las capitulaciones matrimoniales y a la efectividad de este tipo de negocio para relevar al nuevo cónyuge de la obligación de contribuir al sostenimiento de los hijos habidos por su consorte en un matrimonio o relación anterior. Considerado desde esa perspectiva, entendemos que el planteamiento de dicha parte quedó adecuadamente contestado por el excelente análisis realizado por la ilustrada Sala de Instancia, cuya resolución adoptamos y hacemos formar parte de esta sentencia, en cuanto a este particular. Poco hemos de añadir a dicho extenso y riguroso dictamen.

Según hemos visto, el Tribunal de Primera Instancia concluyó: (1) que la responsabilidad impuesta por el art. 1308 del Código Civil, 31 L.P.R.A. sec. 3661, a la sociedad de gananciales por la deudas alimentarias de los hijos habidos por los cónyuges individuales es subsidiaria y que la responsabilidad primaria por dicha obligación recae sobre los padres biológicos de los menores, y (2) que nuestro ordenamiento permite los pactos de separación de bienes y deudas entre contrayentes de un matrimonio, incluyendo cláusulas como la impugnada en el presente caso, para declinar la responsabilidad del cónyuge por las deudas alimentarias de su consorte frente a hijos de matrimonios anteriores. Acogemos ambas conclusiones.

En efecto, que la responsabilidad de la sociedad de gananciales por el sostenimiento de los hijos de uno de los cónyuges es subsidiaria, y no directa, se puede ilustrar, además de por los argumentos expuestos por el Tribunal de Primera Instancia, si se considera la situación en que el matrimonio resulta posteriormente disuelto por divorcio. En tales casos, a nuestro juicio, el cónyuge que no es el padre biológico no continua respondiendo por los gastos de alimentación de los hijos de su ex-pareja, contrario a lo que sería el caso si fuesen hijos propios, 31 L.P.R.A. sec. 384, o según sería el caso respecto a las obligaciones propias de la sociedad de bienes gananciales bajo el art. 1308, las cuales, según se conoce, son imputables a los cónyuges individuales, aún luego del divorcio. Véase, *García v. Montero Saldaña,* 107 D.P.R. 319, 337 (1978); véase, además, *Banco de Ahorro del Oeste v. Santos,* 112 D.P.R. 70, 74-78 (1982).

Similarmente, cabe considerar la situación de los hijos adulterinos, habidos entre uno de los cónyuges y un tercero durante el matrimonio. Aunque la sociedad de bienes gananciales responde subsidiariamente por el mantenimiento de estos menores, creemos que si el matrimonio concluye mediante divorcio, el cónyuge que no es el padre biológico no tiene responsabilidad ulterior de continuar alimentándolos, contrario a la obligación que el art. 143 del Código Civil, 31 L.P.R.A. sec. 562, impone a los padres biológicos.

Según señalara el Tribunal de Primera Instancia, el cónyuge que no es padre biológico de los menores constituye, en estos casos, un *"tercero",* en cuanto a éstos. La obligación de mantener a menores que no son sus hijos le es oponible, sólo indirectamente, por virtud de los lazos que hubiere contraído con el padre biológico. Ésta no es directamente una obligación de la nueva sociedad conyugal, si bien ésta puede adelantar los fondos para satisfacer esta obligación. ■

Por esta razón, tampoco existe base para conferirle un tratamiento especial a este tipo de carga.

El art. 1267 del Código Civil, 31 L.P.R.A. sec. 3551, autoriza a los contrayentes de un matrimonio a celebrar capitulaciones *"estipulando las condiciones de la sociedad conyugal relativamente a los bienes presentes y futuros, sin otras limitaciones que las señaladas en este título."* Se permite, de este modo, que los otorgantes adopten cláusulas para, *inter alia,* declinar las deudas privativas de su pareja que de otro modo serían imputables a la sociedad legal de bienes gananciales, bajo el art. 1308 del Código Civil, 31 L.P.R.A. sec. 3661.

Específicamente, bajo la libertad de pacto provista por el Código Civil, la pareja puede optar por: (1) la separación de bienes pero con participación de ganancias; (2) una sociedad de bienes gananciales para lo cual basta con guardar silencio y no estipular nada o estipularlo expresamente; (3)

renunciar al régimen legal de gananciales; (4) total separación de bienes; (5) elegir cualquier otro régimen que combine estas posibilidades. *Domínguez Maldonado v. Estado Libre Asociado,* __ D.P.R. __ (1995), **95 J.T.S. 16,** a la pág. 638; *Ab Intestato Saldaña Candelario,* 126 D.P.R. 640, 643 (1990); *Umpierre v. Torres Díaz,* 114 D.P.R. 449, 459 (1983); véase, además, *Cruz Ayala v. Rivera Pérez,* __ D.P.R. __ (1996), **96 J.T.S. 84,** a la pág. 1,224 (opinión concurrente de la Juez Naveira de Rodón a la cual se unió el Juez Corrada del Río).

De no especificarse régimen económico alguno, el régimen económico predeterminado será la sociedad legal de gananciales. *Domínguez Maldonado v. Estado Libre Asociado,* **95 J.T.S.** a la pág. 640; *Umpierre v. Torres Díaz,* 114 D.P.R. a las págs. 460-61.

La autonomía de la voluntad de las partes que otorgan capitulaciones no es absoluta. Al igual que en otros contratos, no pueden otorgarse pactos contrarios a las leyes o las buenas costumbres ni depresivos de la autoridad que respectivamente corresponda en la familia a los futuros cónyuges, 31 L.P.R.A. sec. 3552; *Domínguez Maldonado v. Estado Libre Asociado,* **95 J.T.S.** a la pág. 639; *Ab Intestato Saldaña Candelario,* 126 D.P.R. a la pág. 643; *Umpierre v. Torres Díaz,* 114 D.P.R. a la pág. 459 véase, además, 31 L.P.R.A. sec. 3372.

Contrario a la tendencia en otras jurisdicciones civilistas, en Puerto Rico rige la doctrina de la inmutabilidad de las capitulaciones matrimoniales. Estas no pueden ser alteradas una vez se ha llevado a cabo el matrimonio. Véase, 31 L.P.R.A. secs. 3555 y 3556; *Domínguez Maldonado v. Estado Libre Asociado,* **95 J.T.S.** a las págs. 639-40; *Umpierre v. Torres Díaz,* 114 D.P.R. a la pág. 456; *Vilariño Martínez v. Registrador,* 88 D.P.R. 288, 296 (1963).

En la situación de autos, los recurridos efectivamente pactaron la separación de sus bienes, rechazando expresamente el régimen ganancial y acordaron que las deudas personales de cada uno se considerarían privativas. Se contempló, además, que la recurrida Maritza Vélez no aportaría *"para la manutención, mantenimiento ni educación de [la peticionaria]".*

Entendemos, al igual que el Tribunal de Primera Instancia, que, a la luz de dichas capitulaciones, la deuda del recurrido por concepto de alimentos debidos a la peticionaria no es imputable a la recurrida Maritza Vélez. Véase, *Cepeda Torres v. García Ortiz,* **93 J.T.S.** a las págs. 10,396-67 (voto del Juez Rebollo López). No cabe variar el contenido de lo estipulado por los recurridos, luego de celebrado su matrimonio. *Domínguez Maldonado v. Estado Libre Asociado,* **95 J.T.S.** a las págs. 639-40.

La peticionaria plantea que, en vista del alto interés social que revisten los alimentos en nuestra jurisdicción, el recurso de las capitulaciones no puede ser utilizado para evadir dicha carga por la nueva pareja.

No cabe duda que, en Puerto Rico, la obligación de los padres de proveer para los alimentos de sus hijos menores está revestida del más alto interés público. Véase, la declaración de política pública de Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 86 de 17 de agosto de 1994, 8 L.P.R.A. sec. 502; *Soto Cabral v. Estado Libre Asociado,* __ D.P.R. __ (1995), **95 J.T.S. 49,** a la pág. 818. Existe una clara política pública de procurar que los padres o las personas legalmente responsables contribuyan en la medida en que sus recursos se lo permitan, a la manutención y bienestar de sus hijos o dependientes. *Id.*

La obligación de alimentar, según lo ha resuelto el Tribunal Supremo de Puerto Rico, dimana, configurada como un derecho inherente a la persona, del derecho a la vida garantizado por el Artículo II, Secs. 1 y 7 de la Constitución del Estado Libre Asociado de Puerto Rico. *Martínez v. Rivera Hernández,* 116 D.P.R. 164, 168 (1985).

La misma, además, halla base en principios universalmente reconocidos de solidaridad humana asociadas al derecho natural e imperativos de los vínculos familiares, *Rodríguez Avilés v. Rodríguez Beruff,* 117 D.P.R. 616, 621 (1986), y está expresamente estatuida en los arts. 143 y 153 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 562 y 601. *Guadalupe Viera v. Morell,* 115 D.P.R. 4, 11-13 (1983).

El Tribunal Supremo de Puerto Rico ha reiterado el alto interés público de que están revestidos los casos relacionados con alimentos de menores y su jerarquía constitucional. Véase, *Ríos Rosario v. Ramos Vidal*, __ D.P.R. __ (1993), **93 J.T.S. 113**, a la pág. 10,959; *López v. Rodríguez,* 121 D.P.R. 23, 28 (1988); *Negrón Rivera y Bonilla, Ex parte,* 120 D.P.R. 61, 71 (1987). Ha señalado *también que dichos casos gozan de preferencia en el calendario judicial. Galarza Rivera v. Mercado Pagán,* __ D.P.R. __ (1995), **95 J.T.S. 164,** a la pág. 418; *Piñero Crespo v. Gordillo Gil,* 122 D.P.R. 246, 257 (1988).

Los anteriores pronunciamientos, sin embargo, no han derogado la libertad contractual concedida a los contrayentes de un matrimonio por el art. 1267 del Código Civil, de otorgar capitulaciones matrimoniales para variar el régimen económico bajo el cual habrán de convivir. La política pública adoptada en esta área ha sido de permitir la separación de bienes entre los esposos que otorgan capitulaciones, incluyendo la separación de sus deudas y de permitir que cada cónyuge mantenga el control de sus propios bienes.

El ordenamiento autoriza a los cónyuges a mantener sus bienes separados, y a no responder con sus bienes por los préstamos, cuentas de tarjeta de crédito y otras deudas privativas de su pareja. Al igual que el Tribunal de Primera Instancia, no percibimos razón para concluir que las deudas por concepto de pensión alimenticia deban entenderse excluidas de dicha autorización.

Según hemos visto, no obstante el alto interés público que rodea las deudas por concepto de pensión alimenticia, este tipo de deuda es esencialmente una privativa del cónyuge que es el padre biológico del menor. El otro cónyuge es, en cuanto a dicha parte, un *"tercero"*. En ausencia de capitulaciones, la nueva sociedad de bienes gananciales responde por esta obligación, pero sólo subsidiariamente, en la medida en que el padre biológico del menor no cuente con bienes propios suficientes para el pago de la pensión.

Este tipo de carga tiene un indudable contenido afectivo, cuya imposición forzada al cónyuge que no guarda relación con el menor sólo puede dar lugar a reparos y fricciones entre las partes.

En efecto, debe reconocerse que la procreación de un hijo constituye una actividad íntima que marca indeleblemente la existencia de dos seres humanos y que crea lazos de trascendencia entre ellos. Sobrevenida la ruptura de la relación, la existencia de un hijo común constituye un nexo que perdura. Esta situación a menudo genera relaciones tensas o tirantes cuando uno o ambos de los ex-cónyuges contrae nuevas nupcias.

Muchas veces, el nuevo consorte no desea que sus bienes sean utilizados para la manutención de los hijos anteriores de su esposa o esposo, particularmente si interpreta que con ello se está ayudando económicamente al ex-cónyuge, que es quien de ordinario administra la pensión de los menores.

El Derecho debe tomar en consideración esta realidad. Ante la misma, parece ser un contrasentido que se permita a un contrayente desentenderse de todas las deudas privativas de su pareja excepto aquella que precisamente podría resultarle más objetable y sensitiva, que es la deuda por alimentos.

No procede, según sugiere la peticionaria, introducir una distinción entre las deudas por concepto de alimentos y otros tipos de deudas privativas y concluir que las segundas, pero no las deudas de alimentos, pueden ser evitadas por el nuevo cónyuge mediante el otorgamiento de capitulaciones y la adopción de un régimen de separación de bienes.

Acogemos, pues, la conclusión del Tribunal de Primera Instancia de que la cláusula sexta de la escritura de capitulaciones otorgada por los recurridos no es, de su faz, inválida. A la luz de la misma, la obligación del recurrido de proveer alimentos a la peticionaria no es directamente imputable a la recurrida Maritza Vélez.

Ahora bien, lo anterior no significa el fin del análisis. El hecho de que la recurrida Maritza Vélez no responda por la deuda alimentaria del recurrido Jaime Monagas no significa que los bienes de ésta no puedan ser considerados para fines de la fijación de la pensión. Según reconociera el Tribunal de Primera Instancia *"[u]na cosa es imponer a la sociedad de gananciales los alimentos y otra es que se*

*computen sus bienes para la fijación de la pensión alimentaria. Tal distinción nos parece juiciosa y procedente."* (Énfasis eliminado) Resolución, a la pág. 26.

A pesar de que la recurrida no venga obligada, con sus bienes, a satisfacer suma alguna a la peticionaria por concepto de alimentos, ello no necesariamente implica que dichos bienes no puedan ser tomados en consideración al fijar la responsabilidad del recurrido Jaime Monagas por este concepto, si éste en efecto, deriva beneficio de ellos.

Cabe señalar que los *"alimentos"* que viene obligado a proveer el recurrido a la peticionaria incluyen todo aquello que sea indispensable para el sustento, habitación, vestido y asistencia médica de ésta, según la posición social de la familia. *Mundo v. Cervoni,* 115 D.P.R. 422, 426 (1984); *Guadalupe Viera v. Morell,* 115 D.P.R. a la pág. 14; 31 L.P.R.A. sec. 561.

La cuantía de los alimentos se fija de forma proporcionada, no sólo a las necesidades del alimentista, sino también a los recursos que el alimentante tiene a su disposición. 31 L.P.R.A. sec. 565; *Rodríguez Avilés v. Rodríguez Beruff,* 117 D.P.R. a la pág. 621; véase, además, 8 L.P.R.A. sec. 518.

El art. 153 del Código Civil, 31 L.P.R.A. sec. 601, en este sentido, impone la obligación a los padres de alimentar a sus hijos menores no emancipados *"con arreglo a su fortuna".* *Vega v. Vega,* 85 D.P.R. 675, 679 (1962). La Ley Orgánica de la Administración de Sustento de Menores, por su parte, define los ingresos que se tomarán en cuenta para determinar una pensión alimenticia:

*"Ingresos" -comprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales, o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, o de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también de los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica."*

8 L.P.R.A. sec. 501(8).

Dicho estatuto añade que, al determinar los recursos económicos del obligado a pagar una pensión alimentaria, se tomará en consideración, en adición al ingreso neto ordinario, el capital o patrimonio total del alimentante. 8 L.P.R.A. sec. 518.

El lenguaje amplio utilizado por el estatuto implica el deseo del legislador que sus términos sean interpretados de forma expansiva y flexible en favor de la clase protegida por el estatuto, que son los menores alimentistas. Véase, Sarah Torres Peralta, *La Ley Especial de Sustento de Menores y el Derecho de Alimentos en Puerto Rico,* San Juan, Publicaciones STP, Inc., 1997, a las págs. 2.5-2.6; véase, además, *López v. Rodríguez,* 121 D.P.R. 23, 31-32 (1988).

Por su parte, el Tribunal Supremo de Puerto Rico ha aclarado que al determinar la cuantía de una pensión, se deben considerar aspectos tales como el estilo de vida del alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. *Rodríguez Rosado v. Zayas Martínez,* __ D.P.R. __ (1993), **93 J.T.S. 75,** a la pág. 10,721; *López v. Rodríguez,* 121 D.P.R. a la pág. 33.

Cuando cualquiera de los padres constituye una nueva sociedad conyugal, bajo el régimen de sociedad legal de gananciales, los bienes de ésta se consideran al fijar la pensión alimenticia del hijo

habido en un matrimonio anterior. Se presume que, bajo dicho régimen, el padre que se ha casado habrá de beneficiarse de los ingresos y bienes adquiridos por la sociedad y/o su cónyuge. Véase, *López v. Rodríguez*, 121 D.P.R. a la pág. 31; *Mundo v. Cervoni*, 115 D.P.R. a la pág. 424; *Vega v. Vega*, 85 D.P.R. a la pág. 67980; 31 L.P.R.A. sec. 3661.

¿Procede descartar dicha consideración, cuando media una escritura de capitulaciones estableciendo un régimen de separación de bienes? El Tribunal de Primera Instancia parece haber entendido que éste debía ser el caso, desestimando *in toto* la reclamación de la peticionaria. A nuestro juicio, sin embargo, la contestación a esta interrogante debe ser condicionada a que los otorgantes sigan, en realidad, el régimen de separación de bienes pactado por ellos.

En su recurso ante este Tribunal así como ante el Tribunal de Primera Instancia, la peticionaria ha alegado que el otorgamiento de las capitulaciones entre los recurridos se utilizó para encubrir un fraude de acreedores y perjudicar los intereses de la peticionaria. El Tribunal de Primera Instancia, según hemos visto, descartó dicho planteamiento. Concluyó que no cabía hablar de fraude de acreedores en este tipo de contratación, puesto que el cónyuge que no es el padre biológico no tiene obligación alguna de proveer alimentos al hijo de su consorte ni debe, de otro modo, de ser penalizado por declinar una responsabilidad que no le corresponde.

Opinamos, sin embargo, que la resolución de la distinguida Sala de instancia tal vez presta insuficiente atención a la que entendemos constituye la verdadera dificultad que presentan estos casos.

En efecto, existe un indudable debate social sobre la utilización de capitulaciones matrimoniales para evitar el pago de deudas por pensiones alimentarias. El problema, a nuestro juicio, no es que el cónyuge que no es el padre biológico utilice las capitulaciones para declinar la asunción de las deudas privativas de su consorte, incluyendo la obligación de proveer alimentos a los hijos menores de éste. Según hemos concluido, esto válidamente puede hacerse.

La dificultad se origina en que este tipo de negocios a menudo se utilizan para crear la apariencia jurídica de una separación de bienes, cuando en la realidad los otorgantes no mantienen dicha separación y, por el contrario, mezclan sus bienes y comparten sus deudas. Aunque pactan un régimen de separación de bienes, en la realidad se conducen, desde el punto de vista económico, como una sociedad de bienes gananciales.

No se trata tanto, de este modo, de la validez jurídica de las capitulaciones, sino de la adecuación entre derecho y realidad en la existencia económica de la nueva pareja.

A nuestro juicio, la intuición que subyace al argumento de los que se quejan de esta situación, es bien fundada. Si una pareja otorga capitulaciones acordando la separación de bienes y deudas pero luego combinan sus ingresos y activos y comparten sus deudas, comportándose en todos los respectos como una sociedad de bienes gananciales, ello tiene trascendencia, desde el punto de vista de la ley. Compárense, *Domínguez Maldonado v. Estado Libre Asociado*, **95 J.T.S.** a la pág. 641; *Cruz Ayala v. Rivera Pérez*, **96 J.T.S. 84;** *Umpierre v. Torres Díaz*, 114 D.P.R. a la pág. 462.

Nuestro ordenamiento desfavorece generalmente la simulación en las transacciones legales, véanse, *Martínez v. Colón Franco, Concepción*, 125 D.P.R. 15, 24-28 (1989); *Díaz García v. Aponte Aponte*, 125 D.P.R. 1, 8-12 (1989); *Reyes v. Jusino*, 116 D.P.R. 275, 282-285 (1985); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 182 (1985), así como la creación de apariencias jurídicas que luego resultan contradichas por las partes, *Meléndez Piñero v. Levitt & Sons*, __ D.P.R. __ (1991), **91 J.T.S. 95**, a la pág. 9,058; *Berríos v. U.P.R.*, 116 D.P.R. 88, 98-99 (1985); *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585, 588 (1981) *Int. General Electric v. Concrete Builders*, 104 D.P.R. 871, 878 (1976).

Se desfavorecen, similarmente, el empleo de formas o artificios legales cuando éstos van dirigidos a evadir obligaciones legítimas o políticas públicas del estado, véanse, *Departamento de Asuntos del Consumidor v. Alturas de Florida Development Corp.*, __ D.P.R. __ (1993), **93 J.T.S. 33**, a la pág. 10,487; *Abintestato Balzac Vélez*, 109 D.P.R. 670, 681 (1980); *Fleming v. Toa Alta Develop. Corp.*, 96 D.P.R. 240, 243 (1968); *San Miguel Fertil. Corp. v. P.R. Drydock*, 94 D.P.R. 424, 430 (1967);

*Quiñones Rosa v. Fajardo Development Corp.,* 90 D.P.R. 684, 687 (1964), y la utilización de las formas contractuales en perjuicio de tercero, *Velco v. Industrial Service Apparel,* __ D.P.R. __ (1997), **97 J.T.S. 72,** a la pág. 1,054; *Dennis, Metro Invs. v. City Fed. Savs.,* 121 D.P.R. 197, 210-212 (1988).

Se caracterizan generalmente como *"fraudulentas",* distintos tipos de actuaciones, tanto en el ámbito civil como en el criminal, que persiguen la consecución de fines ilegales mediante ardides, engaños o simulaciones. Véanse, e.g., 33 L.P.R.A. secs. 3022, subinciso (15); 4301 y ss. (responsabilidad penal); *Pueblo v. Flores Betancourt,* 124 D.P.R. 867, 877 (1989); 31 L.P.R.A. sec. 3408 (dolo contractual); *Miranda Soto v. Mena Eró,* 109 D.P.R. 473, 477-478 (1980) *(id).;* 31 L.P.R.A. sec. 3492(3) (fraude de acreedores); *Velco v. Industrial Service Apparel,* **97 J.T.S.** a la pág. 1,055 *(id).;* 32 L.P.R.A. Ap. III, R. 49.2, subinciso (3) (fraude al tribunal); *Municipio de Coamo v. Tribunal Superior,* 99 D.P.R. 932, 939 (1971) *(Id).*

En atención a estos valores, el análisis de una relación jurídica en un caso particular de ordinario ha de girar en torno a las realidades económicas envueltas, más bien que a su caracterización legal.

En el área del derecho de familia, específicamente en el de las relaciones económicas entre los cónyuges o concubinos, la tendencia del Tribunal Supremo de Puerto Rico ha sido precisamente la de ir más allá de la mera rúbrica o caracterización jurídica del régimen escogido por la pareja y atender al meollo de la realidad económica subyacente, incluyendo la valoración de actividades tradicionalmente intangibles como la educación y el trabajo doméstico. Véanse, *Domínguez Maldonado v. Estado Libre Asociado,* **95 J.T.S.** a la pág. 641; *Cruz Ayala v. Rivera Pérez,* **96 J.T.S. 84;** *Díaz v. Alcalá,* __ D.P.R. __ (1996), **96 J.T.S. 79,** a la pág. 1,195; *Rodríguez Rodríguez v. Moreno Rodríguez,* __ D.P.R. __ (1994), **94 J.T.S. 43,** a la pág. 11,737; *Quetglass Alvarez v. Carazo Castillo,* __ D.P.R. __ (1993), **93 J.T.S. 146,** a la pág. 11,269; *Ortiz de Jesús v. Vázquez Cotto,* 119 D.P.R. 547, 549 (1987); *Mundo v. Cervoni,* 115 D.P.R. a al pág. 426; *Caraballo Ramírez v. Acosta,* 104 D.P.R. 474, 481 (1975); *Cruz v. Sucn. Landrau Díaz,* 97 D.P.R. 578, 585 (1969).

Esta tendencia ha operado no obstante la existencia de capitulaciones matrimoniales, *Cruz Ayala v. Rivera Pérez,* **96 J.T.S. 84;** *Domínguez Maldonado v. Estado Libre Asociado,* **95 J.T.S. 16,** a la pág. 641; *Rodríguez Rodríguez v. Moreno Rodríguez,* **94 J.T.S.** a la pág. 11,737; *Umpierre v. Torres Díaz,* 114 D.P.R. a la pág. 462.

La misma ha sido extendida al análisis de las deudas de los esposos y su imputabilidad al patrimonio de la sociedad y/o del otro cónyuge. Véase, *Sociedad de Gananciales v. Pauneto Rivera,* __ D.P.R. __ (1992), **92 J.T.S. 78,** a la pág. 9,597; *WRC Prons., Inc., v. Santana,* 116 D.P.R. 127, 134-135 (1985); *Pauneto v. Núñez,* 115 D.P.R. 591, 597 (1984); *Banco de Ahorro del Oeste v. Santos,* 112 D.P.R. a la pág. 78.

En el caso de *Domínguez Maldonado v. Estado Libre Asociado,* **95 J.T.S. 16,** la más reciente opinión del Tribunal Supremo de Puerto Rico en esta área, se trataba de una pareja que, al igual que los recurridos en el caso de autos, había otorgado capitulaciones matrimoniales, pactando la separación de sus bienes. No obstante dicho convenio, las partes plantearon que había surgido una comunidad de bienes entre ellos, lo que confería a la esposa una participación sobre bienes adquiridos a nombre de su marido. Al igual que en el caso de autos, el Tribunal de Primera Instancia desestimó de su faz dichas alegaciones. El Tribunal Supremo de Puerto Rico revocó dicho dictamen, resolviendo que si la peticionaria en efecto podía demostrar que la pareja se había conducido como una comunidad, la peticionaria podía prevalecer en su reclamación. Se devolvió el asunto al foro de instancia para la celebración de una vista sobre este particular. **95 J.T.S.** a las págs. 641-642. Véase, además, el caso de *Cruz Ayala v. Rivera Pérez,* **96 J.T.S. 84,** donde, en una situación parecida y por vía de sentencia, se revocó una sentencia del Tribunal de Primera Instancia y se dispuso un curso similar.

Opinamos que dicho enfoque debe aplicarse a la presente situación.

Cuando, no obstante haber acordado la separación de bienes y deudas mediante capitulaciones matrimoniales, una pareja combina sus recursos y comparte sus deudas, ello tiene el efecto de alterar el ingreso real del cónyuge que viene obligado a pagar una pensión alimenticia a favor de un hijo de

un matrimonio o relación anterior.

No cabe duda que la disponibilidad de una porción de los ingresos del otro cónyuge para hacer frente a las deudas cotidianas y recurrentes del alimentante tiene el efecto de aumentar sus medios. Cuando esta contribución se produce de forma consuetudinaria y la misma excede, con respecto a gastos recurrentes, la participación de los gastos atribuibles a dicho cónyuge, entendemos que la misma debe ser contabilizada como parte de los ingresos del alimentante, para fines de la determinación de la cuantía de la pensión.

Por ejemplo, si la esposa regularmente se hace cargo del pago de más del 50% de los gastos de vivienda, del *"Cable T.V."*, teléfono, electricidad, agua, y otro tipo de deudas similares de la pareja, o cuando asume el pago de deudas privativas del alimentante, tales como el pago del automóvil de éste, de sus préstamos hipotecarios, personales, de estudiante o de otra índole, dichos pagos deben considerarse, en efecto, ingreso para el alimentante y deben ser imputados a éste, para fines de la fijación de su pensión. ■

Esto es, cuando una pareja se conduce, en la realidad, como una sociedad legal de bienes gananciales, no obstante haber otorgado capitulaciones matrimoniales, la contribución del cónyuge que no es el padre biológico del menor a la satisfacción de los gastos del alimentante debe ser sumada a los ingresos de éste al momento de fijarse la pensión, tal y como se hace en el caso de la sociedad legal de gananciales, de modo que la pensión responda a la situación económica real del alimentante.

Lo contrario, a nuestro juicio, constituiría perpetuar la brecha entre derecho y realidad en tales circunstancias. *Figueroa Ferrer v. E.L.A.,* 107 D.P.R. 250, 271 (1978). Una vez otorgadas las capitulaciones, la pareja está vinculada por ellas y obligada a vivir bajo el régimen estipulado. De no ser así se estaría utilizando dicho vehículo legal para burlar el interés público de que los menores sean alimentados por sus padres o madres de acuerdo a los recursos de estos últimos.

Cabe cuestionar si, al amparo de la libertad contractual concedida a los otorgantes por el art. 1267 del Código Civil, 31 L.P.R.A. sec. 3551, podría otorgarse una capitulación que tuviera el fin único o principal de que permitir que el cónyuge de un alimentante decline la responsabilidad por la deuda alimentaria de éste por un hijo de un matrimonio anterior, admitiendo de otro modo, sus demás deudas privativas. A nuestro juicio, tal estipulación, dirigida a evitar una sola carga, no sería válida.

En efecto, de la misma manera que no cabe discriminar a favor de las deudas alimentarias, prohibiendo que éstas sean materia de capitulaciones cuando las partes pactan la separación de todo otro tipo de deuda privativa, somos de la opinión que tampoco cabe admitir el discrimen en contra de dichas deudas, permitiendo a los otorgantes que asuman las otras cargas privativas de su cónyuge, pero no las deudas por alimentos.

Si una persona está dispuesta a pagarle la vivienda, el automóvil, el agua o el *"Cable T.V."* a su cónyuge, entendemos que debe venir igualmente dispuesta a que dichos pagos sean considerados para *"compartir"*, similarmente, la deuda alimenticia que éste pudiera tener ante los hijos de un matrimonio o relación anterior. Nuestro ordenamiento, según hemos visto, considera que las deudas por pensiones están revestidas de un alto interés público. 8 L.P.R.A. sec. 502; *Soto Cabral v. Estado Libre Asociado,* **95 J.T.S.** a la pág. 818; *Martínez v. Rivera Hernández,* 116 D.P.R. a la pág. 168; *Guadalupe Viera v. Morell,* 115 D.P.R. a las págs. 11-13. Sería un contrasentido permitir un discrimen contra este tipo de acreencias.

El art. 1268 del Código prohibe el otorgamiento de pactos contrarios a las leyes o las buenas costumbres ni depresivos de la autoridad que respectivamente corresponda en la familia a los futuros cónyuges, 31 L.P.R.A. sec. 3552; *Domínguez Maldonado v. Estado Libre Asociado,* **95 J.T.S. 16,** a la pág. 639; *Ab Intestato Saldaña Candelario,* 126 D.P.R. 640, 643 (1990); *Umpierre v. Torres Díaz,* 114 D.P.R. a la pág. 459.

Concluimos que nuestro ordenamiento no permite que las capitulaciones matrimoniales sean otorgadas con el fin único o principal de evitar o disminuir el pago de una deuda alimentaria. De ahí que cuando, en efecto el cónyuge del alimentante sufraga más del 50% de los gastos recurrentes y le

paga sus deudas privativas, percibiendo beneficios indirectamente, estos pagos deben de serle imputados al alimentante para fines de su obligación alimentaria, no obstante existan capitulaciones matrimoniales.

El *"ingreso"* real del alimentante, en estos casos, no sólo incluye las cantidades que éste recibe directamente, sino el beneficio que deriva del pago de una porción de sus deudas privativas por su cónyuge. Este beneficio debe ser sumado a su ingreso.

Esta imputación halla base en el lenguaje amplio utilizado por la Ley Orgánica de la Administración de Sustento de Menores para definir los ingresos del alimentante, 8 L.P.R.A. sec. 501 (8). La profesora Torres Peralta comenta, en cuanto a este tipo de beneficio:

*"Todo beneficio que por cualquier concepto reciba el alimentante que tenga valor económico, aunque se trate de partidas no monetarias, deberá ser sumado al ingreso bruto del alimentante a los fines de hacer las determinaciones de rigor sobre su responsabilidad alimentaria.*

*Así, por ejemplo, vemos que hay padres alimentantes no custodios que informan carecer de dinero para su propia subsistencia, y señalan que el familiar, su madre, su hermano o un extraño le pagan la renta de la vivienda que el alimentante habita. Es caso claro de imputación de ingresos, y el montante de la renta será sumado a su ingreso bruto. Ese mismo padre alimentante utiliza un carro de un hermano para sus fines personales o de trabajo. El valor rental de dicho automóvil que se le facilite gratuitamente, será igualmente sumado al ingreso que informe el alimentante con el fin indicado. Lo mismo ocurre cuando el padre alimentante vive gratuitamente en el hogar de un familiar, o se le provee algún otro servicio gratuito como uso de teléfono, o de oficina sin paga alguna. Todas esas partidas tienen un valor económico que deberá ser determinado para sumarlo al ingreso bruto del alimentante.*

*Mediante la imputación de ingresos de los beneficios no monetarios, traducibles en valor económico, que reciba el alimentante no custodio de cualquier fuente, se controla, por lo menos en términos relativos, la posibilidad de evasión del cumplimiento de la obligación alimentaria por suma adecuada."*

*Supra*, a las págs. 2.32-2.33.

Lo anterior no implica que la deuda por pensión alimentaria se transfiera o se impute al cónyuge que no es el padre biológico del menor. Dicha parte, según hemos visto, no tiene ninguna responsabilidad directa por el pago de dicha deuda. La imputación, de este modo, corresponde hacerla sobre los bienes del alimentante, a cuyo ingreso se adicionaría la contribución que realiza su consorte para el pago de sus deudas recurrentes. ■

No obstante, toda vez que se requiere una investigación y análisis de la verdadera situación económica de los cónyuges, posiblemente resulte deseable la inclusión en el procedimiento del cónyuge que no es el padre biológico del menor. Véase, *Rodríguez Rodríguez v. Moreno Rodríguez,* **94 J.T.S. 43,** a la pág. 11,737; *Cepeda Torres v. García Ortiz,* **93 J.T.S. 20,** a la pág. 10,396.

Reconocemos que lo anterior plantea la interrogante de cómo, y a quién corresponde el peso de, establecer si los cónyuges que han otorgado capitulaciones y acordado un régimen de separación de bienes verdaderamente operan bajo dicha premisa.

El peso para obtener una rebaja en una pensión, que es lo que solicita el recurrido Jaime Monagas en este caso, corresponde a la parte promovente, *López v. Rodríguez,* 121 D.P.R. a la pág. 33 n.13; véase, además, 8 L.P.R.A. sec. 518. Por otro lado, el peso para establecer un fraude o simulación, corresponde a la persona que lo reclama, *Díaz García v. Aponte Aponte,* 125 D.P.R. a la pág. 12.

Consideramos que el peso para establecer que una pareja que ha otorgado capitulaciones matrimoniales en efecto no ha observado la separación de bienes que hubiese sido acordada debe corresponder inicialmente a la parte que levanta tal alegación, quien deberá demostrar, además, cuál es la contribución del cónyuge que no es el padre biológico del menor alimentista a los gastos del

alimentante. Compárese, *Domínguez Maldonado v. Estado Libre Asociado*, **95 J.T.S. 16,** a la pág. 642.

Ahora bien, estamos conscientes que dicha prueba es difícil de producir para el alimentista, quien no tiene conocimiento ni control de los detalles de las transacciones económicas de los cónyuges. Aunque esta carencia de información podría ser subsanada por vía de los medios de descubrimiento de prueba, lo cierto es que la sociedad de bienes gananciales no viene obligada, como tal, a mantener libros de contabilidad, *García v. Montero Saldaña,* 107 D.P.R. a la pág. 323. Se trata, aparentemente, de una materia *difficilioris probationes, Díaz García v. Aponte Aponte*, 125 D.P.R. a la pág. 11.

No obstante lo anterior, opinamos que la dificultad no es tan formidable como podría parecer. Debe recordarse que el tipo de gasto cuya satisfacción por el otro cónyuge puede dar base a la imputación a los ingresos del alimentante que hemos venido discutiendo son los gastos ordinarios y recurrentes. Hemos sugerido, como ejemplos, los gastos de vivienda, pagos de automóvil, préstamos hipotecarios, personales, estudiantiles o de otra índole, teléfono, agua, electricidad, *"Cable T.V."* y otras deudas de naturaleza análoga.

La experiencia dicta que, por su carácter recurrente, las parejas conservan la documentación de este tipo de gasto, al menos por períodos razonables. El régimen económico de una pareja también puede ser reconstruido mediante el examen de los pagos girados contra las cuentas de cheques o corrientes de cada pareja, ▪ documentos que, de ordinario, también suelen ser conservados por algún tiempo.

Una pareja que otorgue capitulaciones matrimoniales sin duda debe ser capaz de producir una documentación suficiente de sus actividades económicas recientes, de forma tal que pueda comprobarse que la separación de bienes que pactaron en las capitulaciones está siendo seguida en realidad.

En estos casos, la ausencia total de información y la alegación por los cónyuges de que no se han conservado récords de las operaciones de la pareja, autoriza al juzgador acucioso a invertir el peso de la prueba y a requerir que sean los otorgantes de las capitulaciones los que, en efecto, establezcan que dicho régimen ha sido observado por ellos. Véanse, *Díaz García v. Aponte*, 125 D.P.R. a las págs. 13-14; *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. a la pág. 78; *García López v. Méndez García,* 102 D.P.R. 383, 391 (1974). De no descargarse este peso, el juzgador podría concluir que no ha existido la separación de bienes y combinar los ingresos y bienes de ambos cónyuges para la fijación de la pensión alimenticia, tal y como se hace bajo el régimen de sociedad legal de gananciales.

Aunque la conducta dolosa o fraudulenta no se presume, la misma no tiene que ser probada con certeza matemática, sino que basta que se establezca la misma mediante preponderancia de la prueba que satisfaga la conciencia del juzgador, lo que puede conseguirse mediante evidencia indirecta, a base de las presunciones e inferencias que puedan derivarse de una situación sospechosa. *Díaz García v. Aponte Aponte*, 125 D.P.R. a las págs. 13-14; *De Jesús Díaz v. Carrero*, 112 D.P.R. 631, 637 (1982); *Márquez v. Torres Campos,* 111 D.P.R. 854, 871 n.19 (1982); *García López v. Méndez García,* 102 D.P.R. a la pág. 386.

Reconocemos que el remedio que hemos contemplado es distinto al solicitado por la peticionaria en su escrito. El argumento formulado por dicha parte perseguía más bien la anulación de su faz de las capitulaciones. El Tribunal Supremo de Puerto Rico, sin embargo, ha observado que *"cuando de hacer justicia se trata, especialmente en las áreas de gran interés público, no hay moldes que limiten o aprisionen los remedios justos." Torres Capeles v. Rivera Alejandro,* __ D.P.R. __ (1997), **97 J.T.S. 77,** a la pág. 1,092; *Negrón Rivera y Bonilla, Ex parte,* 120 D.P.R. 61, 73 (1987).

Por los fundamentos expresados, se modifica la resolución emitida por el Tribunal de Primera Instancia. Se confirma el dictamen de dicho foro sosteniendo la validez jurídica de las capitulaciones impugnadas. Se devuelve el caso a dicho Tribunal, sin embargo, para que, conforme a los criterios discutidos en esta sentencia, se haga excusión de bienes y determine si alguna porción de los ingresos y bienes de la recurrida Maritza Vélez Vélez deben ser considerados como ingreso del alimentante Jaime Monagas.

Lo pronunció y manda el Tribunal y lo certifica la Señora Secretaria General. La Juez Feliciano Acevedo disiente sin opinión escrita.

Aida Ilena Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 141

1. Algunos de los jueces del Tribunal Supremo, sin embargo, adelantaron su criterio en torno a la cuestión. Véase, **93 J.T.S.** a las págs. 10,396-67 (voto del Juez Asociado Rebollo López).

2. La solución adoptada por el Tribunal de Primera Instancia y refrendada por este Tribunal es consistente con la norma adoptada por el art. 1,362 del Código Civil Español, luego de la reforma del derecho de familia de dicho país. Dicho precepto, en lo pertinente, establece la responsabilidad de ambos cónyuges por el *"sostenimiento de la familia, la alimentación de los hijos comunes y las atenciones de previsión acomodadas a los usos y a las circunstancias de la familia."* Añade que: La alimentación y educación de los hijos de uno solo de los cónyuges correrá a cargo de la sociedad de gananciales cuando convivan en el hogar familiar. En caso contrario, los gastos derivados de estos conceptos serán sufragados por la sociedad de gananciales, pero darán lugar a reintegro en el momento de la liquidación. Véase, Revista de Derecho Privado (Manuel Albaladejo, director), *Comentarios al Código Civil y Compilaciones Forales,* Tomo XVIII, Vol. 2, Editorial Revista de Derecho Privado, Madrid, 1984, a las págs. 233 y ss.

3. Desde luego, esta imputación no se extiende a los regalos o gastos incidentales que los esposos puedan hacerse entre sí y que no gocen de naturaleza recurrente. El pago de una cena, de un pasaje de avión o de la estadía de un hotel para una vacación carecerían de esta naturaleza y no serían imputables como un *"ingreso"* del alimentante. Cf., 13 L.P.R.A. sec. 8422.

4. No expresamos opinión sobre si, en la situación en que un alimentante no cuente con ingresos propios, pero sea mantenido por su nuevo cónyuge, el alimentista pueda dirigirse directamente contra este último. Pero véase, 31 L.P.R.A. sec. 5194.

5. Desde luego, la existencia de cuentas comunes tiende a ser un indicio poderoso de que las partes no mantienen una separación de bienes y que el ingreso del otro cónyuge debe ser imputado al alimentante.